870 A.2d 732 (2005)
376 N.J. Super. 451
In the Matter of Registrant R.B.
Superior Court of New Jersey, Appellate Division.
Argued March 9, 2005.
Decided April 15, 2005.
*734 Michael Z. Buncher, Deputy Public Defender, argued the cause for appellant, R.B. (Yvonne Smith Segars, Public defender, attorney; Mr. Buncher, on the brief).
Colleen Hannon, Assistant Prosecutor, argued the cause for respondent, State of New Jersey (Edward J. De Fazio, Hudson County Prosecutor, attorney; John R. Mulkeen, Assistant Prosecutor, and Ms. Hannon, on the brief).
Before Judges CONLEY, LISA and WINKELSTEIN.
The opinion of the court was delivered by
WINKELSTEIN, J.A.D.
In this case, the court is asked to decide whether appellant, R.B., is required by Megan's Law to register as a sex offender in New Jersey. He appeals from the Law Division's April 15, 2004 and August 27, 2004 orders requiring him to register based upon his federal conviction for sexual exploitation of children, a violation of 18 U.S.C.A. § 2251(a). We conclude that because the federal crime for which R.B. was convicted contains all of the elements of the New Jersey luring a child statute, N.J.S.A. 2C:13-6, an enumerated offense under Megan's Law, he is required to register in New Jersey as a sex offender. Accordingly, we affirm.
The material facts and procedural history are not in dispute.[1] In June 1993, R.B. and a co-defendant, E.F., were targeted by *735 New Jersey law enforcement agencies. They were believed to be involved in transporting minor males from New York to New Jersey to engage in sexually explicit conduct. R.B. had been convicted in New York of second and third-degree sodomy in 1983, and second-degree sodomy in 1989. He and relatives of E.F. had purchased a home in Bayonne, where E.F. lived in the basement; his relatives lived upstairs. R.B. lived in Mt. Vernon, New York, but he frequently stayed in the Bayonne residence.
Law enforcement officials learned of a want-ad placed in a Bayonne newspaper, seeking part and full-time construction helpers, between the ages of fifteen-and-a-half and seventeen-and-a-half; applications were to be taken to the Bayonne residence. The authorities set up surveillance across the street from the home and obtained an order for a wiretap. During the surveillance, "several young males [were observed] going into the basement area" of the home. From June to September, R.B. continually brought groups of youths from the Bronx to work on the house, and to go with him to a nude beach; they often stayed overnight.
An informant working with the police introduced undercover New Jersey State Police Officer R.H. to E.F. Over time, E.F. and R.H. discussed their interests in young boys. The officer told E.F. he was having relations with two young boys, one age seventeen and the other twelve-and-a-half.
On several occasions, E.F. and R.B. shared various depictions of nude boys between the ages of twelve and seventeen with R.H., including videotapes, pictures and books. E.F. agreed to show R.H. several slides of nude boys. In September 1993, R.B. transported the slides from his home in Mt. Vernon to the Bayonne residence, where the three men viewed the slides on a projector screen  of thirty-one slides, eight were sexually explicit.
Search warrants were executed on the Bayonne and Mt. Vernon residences. The search of the Bayonne residence uncovered sexually explicit videotapes. Relevant to this appeal, a videotape of R.B. and two seventeen-year-old boys, M.S. and L.T., made in the basement of the Bayonne house, was found in R.B.'s Mt. Vernon home. The tape showed R.B., M.S. and L.T. "stripped and [taking] turns videotaping each other frolicking in various stages of sexual arousal." Also discovered in the New York residence were two tapes of a twelve-year-old boy and a fourteen-year-old boy engaging in sexually explicit conduct. No evidence existed that these latter tapes were made in New Jersey or otherwise crossed state lines.
R.B. and E.F. were arrested. R.B. was charged by the Hudson County prosecutor with: one count of conspiracy to endanger the welfare of a child and two substantive counts of endangering the welfare of a child, N.J.S.A. 2C:24-4b, and one count of possession of cocaine, N.J.S.A. 2C:35-10. In addition, E.F. was charged with a fifth count, child abuse in violation of N.J.S.A. 9:6-1 and -3. The drug count was no-billed and the remaining counts were dismissed by the State. The record does not indicate why the endangering charges were dismissed.
In late 1994, a federal indictment charged R.B. with six offenses. Count one charged conspiracy to commit five offenses, contained in counts two through six. Two counts are germane to this appeal. Count two charged R.B. with transporting "from New York to New Jersey individuals under the age of 18 years to engage in sexual activities with such minors which constituted criminal offenses set forth in a state statute, N.J.S.A. 2C:14-1 et seq.," contrary to 18 U.S.C.A. § 2423. *736 Before trial, the judge found that count two "could not withstand a motion to dismiss." As a result, the government filed an amended indictment omitting count two.
Count three charged R.B. with inducing "individuals under 18 to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, such depictions having been thereafter transported in interstate commerce," contrary to 18 U.S.C.A. § 2251(a). The basis for that charge was: "[R.B.] engaging in sexual activities in his bedroom with 17 year olds M.S. and L.T., videotaping those activities, and then bringing those videotapes to his home in Mt. Vernon where they were found." The tapes of the twelve and fourteen-year-old boys were not used as a factual predicate for count three of the federal offense, but were, according to the federal judge, relevant to show R.B.'s "intent, knowledge and state of mind."
Following a jury trial, R.B. was convicted of all counts. The judge sentenced him to 120 months imprisonment on count three consecutive to one month on count one, and 120 months concurrent on each of the remaining counts. R.B.'s motion for reconsideration of his sentence was denied, and his appeal to the Third Circuit was rejected.
R.B. was released from prison on September 25, 2002, and registered pursuant to Megan's Law with the Union City police. Nevertheless, on June 21, 2003, he moved in the Law Division for an order declaring that his federal conviction did not come within the purview of Megan's Law because the conviction was not similar to an enumerated offense under Megan's Law. The State argued, and the Law Division agreed, that R.B. was required to register because his conviction under count three was similar to New Jersey's luring statute. On reconsideration, the judge reaffirmed his original decision, but adopted new reasoning for doing so. He found that R.B.'s federal conviction was sufficiently similar to N.J.S.A. 9:6-1(e), New Jersey's child abuse statute, to require registration.
The singular issue on appeal is whether the federal offense for which R.B. was convicted is one that is "similar to" an offense enumerated in Megan's Law so as to require R.B. to register in this State as a sex offender. While we owe deference to the trial court's fact-finding, a "trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Tp. Comm., 140 N.J. 366, 378, 658 A.2d 1230 (1995). As such, our review is de novo. Ibid.
Effective October 31, 1994, Megan's Law, N.J.S.A. 2C:7-1 to -19, requires certain convicted sex offenders to register with law enforcement authorities and notify them upon a change of address. N.J.S.A. 2C:7-2. The Legislature declared two reasons for the law's enactment. First, it establishes "a system of registration [to] permit law enforcement officials to identify and alert the public when necessary for the public safety"; and second, it provides "law enforcement with additional information critical to preventing and promptly resolving incidents involving sexual abuse and missing persons." N.J.S.A. 2C:7-1.
Megan's Law was "designed simply and solely to enable the public to protect itself from the danger posed by sex offenders, such offenders widely regarded as having the highest risk of recidivism." Doe v. Poritz, 142 N.J. 1, 73, 662 A.2d 367 (1995). The enactment is remedial rather than punitive. Ibid. The statutory scheme represents the Legislature's conclusion *737 that society has the right to know of the presence of sex offenders "not in order to punish them, but in order to protect itself." Id. at 13, 662 A.2d 367.
The statute is to be construed "broadly to achieve its goal of protecting the public...." State v. S.R., 175 N.J. 23, 36, 811 A.2d 439 (2002). At the same time, because it impinges on liberty interests and triggers "both procedural due process and the fairness doctrine in our state," we must balance the need for public safety with individual rights. Doe, supra, 142 N.J. at 30, 36, 662 A.2d 367; see also In re S.D., 855 A.2d 1100, 1105 (D.C.2004)(statute requiring registration of sex offenders given broad construction to effectuate goals of legislation); In re Millan, 189 Misc.2d 419, 730 N.Y.S.2d 392, 398 (Sup.Ct.2001)(sex offender registration statute, as remedial rather than penal, "should be liberally construed to accomplish the express intent of the New York Legislature"), rev. on other grounds, 295 A.D.2d 267, 743 N.Y.S.2d 872 (2002).
Those provisions of Megan's Law that are pertinent to this appeal state:
a. (1) A person who has been convicted ... of a sex offense as defined in subsection b. of this section shall register as provided in subsections c. and d. of this section.
....
b. For the purposes of this act a sex offense shall include the following:
(1) Aggravated sexual assault, sexual assault, aggravated criminal sexual contact, kidnapping pursuant to paragraph (2) of subsection c. of N.J.S. 2C:13-1 ...;
(2) A conviction ... for aggravated sexual assault; sexual assault; aggravated criminal sexual contact; kidnapping pursuant to paragraph (2) of subsection c. of N.J.S. 2C:13-1; endangering the welfare of a child by engaging in sexual conduct which would impair or debauch the morals of the child pursuant to subsection a. of N.J.S. 2C:24-4; endangering the welfare of a child pursuant to paragraphs (3) or (4) or subparagraph (a) of paragraph (5) of subsection b. of N.J.S. 2C:24-4; luring or enticing pursuant to section 1 of P.L. 1993, c. 291(C.2C:13-6) ...;
(3) A conviction ... for an offense similar to any offense enumerated in paragraph (2) or a sentence on the basis of criteria similar to the criteria set forth in paragraph (1) of this subsection entered or imposed under the laws of the United States, this State or another state.

[N.J.S.A. 2C:7-2 (emphasis added).]
It is the last paragraph that is the focus of the appeal. The statute does not define a "similar" offense. That term is used, though, in New Jersey's Persistent Offenders Accountability Act, N.J.S.A. 2C:43-7.1, generally referred to as the "Three-Strikes Law." This law requires life imprisonment without parole for a person convicted of an enumerated offense, "who has on two or more prior and separate occasions been convicted of a crime under any of the [law's enumerated crimes] or `under any similar statute of the United States, this State, or any other state for a crime that is substantially equivalent to' [any enumerated crime]." State v. Rhodes, 329 N.J.Super. 536, 544, 748 A.2d 625 (App.Div.) (quoting N.J.S.A. 2C:43-7.1a (emphasis added)), certif. denied, 165 N.J. 487, 758 A.2d 647 (2000). To determine if the statute is similar for sentence enhancement, we compared the statutory elements of the enumerated offenses with the elements of the prior convictions. Ibid.; see also State v. Simon, 161 N.J. 416, 459-61, 737 A.2d 1 (1999) (for sentence *738 enhancement, court should only look at conviction, and not facts behind conviction to determine whether foreign offense was a comparable offense in New Jersey). In other words, so long as the conduct supporting the conviction was qualitatively similar, the convictions were similar for purposes of the Three-Strikes Law. State v. Oliver, 316 N.J.Super. 592, 597-99, 720 A.2d 1001 (App.Div.1998), aff'd, 162 N.J. 580, 745 A.2d 1165 (2000).
Though no New Jersey court has addressed what offense is similar under Megan's Law, a number of foreign jurisdictions have focused on this issue vis-a-vis their own sex offender registration statutes. While the tests used in other states to interpret their comparable Megan's Law statutes vary, a comparison of the elements of each offense is a significant factor. Arizona and Illinois follow an "elements only" test, which permits the trial court to compare only the elements of the offenses, and not look at the facts underlying the convictions. See State v. Kuntz, 209 Ariz. 276, 100 P.3d 26, 28-30 (Ct.App.2004)(court compares elements of foreign offense with corresponding Arizona offense); Rodimel v. Cook County Sheriff's Office, 354 Ill.App.3d 744, 290 Ill.Dec. 725, 822 N.E.2d 7, 11 (2004)(foreign offense must be "substantially equivalent" to enumerated Illinois offense).
New York courts are split, with two courts requiring an "elements only" test. In In re Mandel, the court concluded that when comparing a conviction from a foreign jurisdiction, the state court looks only at the elements of the crime. 184 Misc.2d 897, 711 N.Y.S.2d 313, 316 (Co.Ct.2000), aff'd, 293 A.D.2d 750, 742 N.Y.S.2d 321 (App.Div.), appeal dismissed, 98 N.Y.2d 727, 749 N.Y.S.2d 476, 779 N.E.2d 187 (2002). Similarly, in In re Nadel, 188 Misc.2d 427, 724 N.Y.S.2d 262, 269 (Sup.Ct.2001), the court strictly construed the "essential elements" language in its statute and required "virtually identical" elements. Nevertheless, the Nadel court suggested that strict application of the "essential elements" test may limit the number of convicted offenders who must register, which may be inconsistent with the spirit of the sex offender registration act. Id. at 271.
Taking another view, the court in Millan, supra, 730 N.Y.S.2d at 398-99, found that comparing only the essential elements of the crimes was too restrictive. To comply with the express intent of the Legislature, the court approved a broader approach, permitting the trial court to examine the facts underlying the conviction to determine whether the federal crime contained the essential elements of the state crime. Id. at 399.
Pennsylvania's sex offender registration statute applies to" `individuals convicted of an equivalent offense ... where the conviction occurred in another state, territory, Federal court or the District of Columbia....'" Commonwealth v. Miller, 787 A.2d 1036, 1039 (Pa.Super.Ct.2001) (quoting 42 Pa. Stat. Ann. 9795.2), appeal denied, 568 Pa. 735, 798 A.2d 1288 (2002). "`An equivalent offense is that which is substantially identical in nature and definition as the out-of-state or federal offense when compared to the Pennsylvania offense.'" Ibid. (quoting Commonwealth v. Whisnant, 390 Pa.Super. 192, 568 A.2d 259, 260 (1990)). The court compared" `not only the elements of the crimes, but also ... the conduct to be prohibited and the underlying public policy of the two statutes.'" Ibid. (quoting Commonwealth v. Robertson, 555 Pa. 72, 722 A.2d 1047, 1049 (1999)).
Finally, the District of Columbia's sex offender statute requires registration when an offense in a foreign jurisdiction involves" `conduct that would constitute an offense described [in the District of Columbia *739 statute] if committed in the District of Columbia....'" S.D., supra, 855 A.2d at 1104 n. 4 (quoting D.C.Code Ann. § 22-4001(8)(G)). Because of its similarity to the case at hand, S.D. bears some discussion.
S.D. pleaded guilty in federal court to the crime of Interstate Travel with Intent to Engage in Sexual Acts with a Minor, 18 U.S.C.A. § 2423(b). The comparable offenses in the District of Columbia were "attempted enticement of a child ... and lewd, indecent or obscene acts with a child...." S.D., supra, 855 A.2d at 1102. In comparing the offenses, the court considered the undisputed fact that S.D. "intended upon arriving in Virginia to `entice, allure, or persuade' a `child' to go some place with him for sexual intercourse, and he performed a substantial action in furtherance of that goal by traveling from Kansas to the Pentagon City shopping mall to meet the child there." Id. at 1105.
S.D. argued that the federal offense was not similar, because it "merely criminalizes the act of crossing state lines with particular criminal intent, [while] the D.C. offenses criminalize completed or attempted sexual acts with a minor ..." Id. at 1107 (internal quotations omitted). The court disagreed, finding "the similarity between S.D.'s federal offense and the District of Columbia offense of attempted enticement of a child [to be] obvious and substantial." Id. at 1105. It reasoned that the legislative intent of the sex offender registration statute was to "deemphasize such distinctions between the definitions of sex offenses in different jurisdictions in order to achieve the public safety goals of registration and community notification about sex offenders." Id. at 1107.
Bringing these principles to bear, we conclude that so long as the conviction being compared to a Megan's Law enumerated offense contains the same essential elements, and the underlying purposes of the crimes are consonant, the conviction should be considered similar to the Megan's Law enumerated offense for purposes of requiring sex offender registration in New Jersey. Because the elements of the offense cannot be viewed in a vacuum, to make this determination may entail examining the facts underlying the offense as charged in the indictment. We believe this approach will reconcile the competing public policies of protecting the public against sex offenders, while also ensuring the potential registrant's due process rights.
We turn next, then, to an application of this test to the case at hand. R.B. was charged with violation of 18 U.S.C.A. § 2251(a). This statute says, in part,
(a) Any person who ... persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in interstate... commerce ... with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, shall be punished ... if such person knows or has reason to know that such visual depiction will be transported in interstate ... commerce ... if that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate ... commerce by any means, including by computer, or if such visual depiction has actually been transported in interstate ... commerce or mailed.
[18 U.S.C.A. § 2251(a).]
To establish a prima facie case under this provision, the government must prove:
(a) a person employed, used, persuaded, induced, enticed or coerced (b) a minor *740 (c) to engage in or to assist another person to engage in (d) sexually explicit conduct (e) for the purpose of producing a visual depiction of such conduct (f) the person knew or had reason to know the visual depiction would be transported in interstate or foreign commerce or mailed (g) or such visual depiction was transported in interstate or foreign commerce or mailed.
[United States v. Reedy, 632 F.Supp. 1415, 1417 (W.D.Okla.1986), aff'd, 845 F.2d 239 (10th Cir.1988), cert. denied, 489 U.S. 1055, 109 S.Ct. 1318, 103 L.Ed.2d 587 (1989).]
A minor is any person under the age of eighteen. Ibid.
R.B. was charged with, and convicted of, making a video in the Bayonne residence of two seventeen-year-old males and himself, "frolicking in various stages of sexual arousal," and transporting that video from New Jersey to New York. The State claims the conviction is for an offense that is similar to luring, an enumerated offense under Megan's Law.
A person may be found guilty of luring in New Jersey if he or she "attempts ... to lure or entice a child or one who he reasonably believes to be a child into a motor vehicle, structure or isolated area, or to meet or appear at any other place, with a purpose to commit a criminal offense with or against the child." N.J.S.A. 2C:13-6. A child is a person less than eighteen years old. Ibid. The elements necessary to prove luring are: (1) the accused attempted to lure or entice a child into a motor vehicle, structure, or isolated area; (2) the child is under the age of eighteen; (3) the accused had a purpose to commit a criminal offense with or against that child. State v. Perez, 177 N.J. 540, 550, 832 A.2d 303 (2003). The act of child luring is complete with the attempt to lure or entice a child with a criminal purpose. Ibid.
This statute was intended to "`close a gap between criminal charges of attempted kidnapping and the lesser offense of harassment for those instances in which a person unsuccessfully tries to lure a child ... with a criminal purpose.'" Id. at 547-48, 832 A.2d 303 (quoting Sponsor Statement to Senate, No. 1524 (Feb. 1, 1993)). The Legislature intended to "`criminalize the early stages of what may develop into kidnapping or a sex offense.'" Id. at 548, 832 A.2d 303 (quoting Cannel, New Jersey Criminal Code Annotated, comment 1 on N.J.S.A. 2C:13-6 (2000)).
R.B. claims luring is not similar to the federal conviction under the facts of this case. He does not dispute that he committed the first two elements of luring  he lured the seventeen-year-old boys to the New Jersey residence to engage in sexual conduct with them and videotape that conduct. Instead, he argues he did not commit the third element of luring  he did not lure them for a criminal purpose. He reasons that because the boys were seventeen, engaging in sexual conduct with them is not a crime under New Jersey's Child Endangerment Statute, N.J.S.A. 2C:24-4. That statute prohibits a person from engaging "in sexual conduct which would impair or debauch the morals of the child, or who causes the child harm that would make the child an abused or neglected child...." N.J.S.A. 2C:24-4a. Child, however, is defined under this statute as "any person under 16 years of age." N.J.S.A. 2C:24-4b(1). Thus, R.B. contends that because the boys on the videotape were seventeen, his conduct with regard to those individuals was legal. As additional support for his position, he relies on comments made by the federal judge at sentencing and in his May 27, 1998 letter opinion, where he noted that because "the *741 age of consent in New Jersey is 16 years, there was nothing illegal about those activities at the time the video was taken."
The State concedes that N.J.S.A. 2C:24-4 is not applicable because M.S. and L.T. were over sixteen. Nonetheless, the State argues the luring statute does apply, as the "criminal purpose" element of luring is satisfied by a New Jersey offense the federal judge did not consider, N.J.S.A. 9:6-1, which, while not part of Title 2C, the New Jersey Criminal Code, is also a crime that involves sexual misconduct toward a child. See N.J.S.A. 9:6-3 (violation of N.J.S.A. 9:6-1 a fourth-degree crime). And, a child under Title 9 is "any person under 18 years of age." N.J.S.A. 9:2-13(b).
Chapter 6 of Title 9, Article 1, is divided into three subsections. Each represents different legislative enactments. Subsection A, which includes both N.J.S.A. 9:6-1 and -3 and defines and criminalizes child abuse, is applicable in this case. Subsections B and C, which address reporting provisions and procedures, and proceedings in the Superior Court, Family Part in cases of child abuse and neglect, are not.
N.J.S.A. 9:6-1 prohibits four types of conduct toward a child: abuse, abandonment, cruelty and neglect. The law contains no restriction as to who may commit abuse and cruelty; on the other hand, only a person "having the custody or control of the child" may be guilty of abandonment and neglect. N.J.S.A. 9:6-1.
The abuse provision of N.J.S.A. 9:6-1 says, in part, "Abuse of a child shall consist in any of the following acts:... (e) the performing of any indecent, immoral or unlawful act or deed, in the presence of a child, that may tend to debauch or endanger or degrade the morals of the child...." Ibid."Cruelty to a child shall consist in any of the following acts: ... (e) or exposing a child to unnecessary hardship, fatigue or mental or physical strains that may tend to injure the health or physical or moral well-being of such child." Ibid. This prohibited conduct is criminalized by N.J.S.A. 9:6-3, which states, in part:
Any parent, guardian or person having the care, custody or control of any child, who shall abuse, abandon, be cruel to or neglectful of such child, or any person who shall abuse, be cruel to or neglectful of any child shall be deemed to be guilty of a crime of the fourth degree.
[N.J.S.A. 9:6-3 (emphasis added).]
The State claims R.B. qualifies as "any person," and his conduct resulting in his conviction for count three of the federal indictment constituted abuse and cruelty of the two seventeen-year-old boys, satisfying the criminal purpose element of the luring statute.
We find the State's argument to be persuasive. The conduct prohibited by N.J.S.A. 9:6-1 and -3 as a fourth-degree crime is essentially the same conduct the Legislature prohibited under N.J.S.A. 2C:24-4, except the latter crime applies only to children under sixteen years old and is a second-degree offense. State v. N.A., 355 N.J.Super. 143, 151, 809 A.2d 825 (App.Div.2002), certif. denied, 175 N.J. 434, 815 A.2d 480 (2003); see also State v. D.V., 348 N.J.Super. 107, 115, 791 A.2d 304 (App.Div.2002), aff'd, 176 N.J. 338, 823 A.2d 34 (2003). "The same `knowing' culpability applies to each offense." N.A., supra, 355 N.J.Super. at 152, 809 A.2d 825; see also State v. Overton, 357 N.J.Super. 387, 393, 815 A.2d 517 (App.Div.) ("[t]o convict defendant of child abuse, the State had to prove beyond a reasonable doubt that defendant knowingly performed any indecent, immoral or unlawful act or deed that may have tended to debauch or degrade *742 [the child's] morals"), certif. denied, 177 N.J. 219, 827 A.2d 287 (2003).
The luring statute refers to a criminal offense with or against a child. N.J.S.A. 2C:13-6. It does not restrict the criminal offense to child endangerment. A crime need not be defined in Title 2C, but may be defined "by any other statute of this State, for which a sentence of imprisonment in excess of 6 months is authorized...." N.J.S.A. 2C:1-4a. N.J.S.A. 9:6-3 renders a violation of N.J.S.A. 9:6-1 a crime of the fourth-degree, which carries a sentence of imprisonment not to exceed eighteen months. N.J.S.A. 2C:43-6a(4). Consequently, a violation of N.J.S.A. 9:6-1 and -3 satisfies the criminal purpose element of the luring statute. Cf. State v. N.I., 349 N.J.Super. 299, 306, 793 A.2d 760 (App.Div.2002)(crime of child abuse in N.J.S.A. 9:6-1 and -3 incorporated into N.J.S.A. 2C:24-4a); State v. Demarest, 252 N.J.Super. 323, 328, 599 A.2d 937 (App.Div.1991)(same).
We are cognizant that N.J.S.A. 9:6-1 does not expressly use the term "sexual conduct" as does the child endangering statute, N.J.S.A. 2C:24-4a, and crimes that do not encompass sexual offenses are not appropriate for Megan's Law violations. See In re T.S., 364 N.J.Super. 1, 8, 834 A.2d 419 (App.Div.2003)(kidnapping conviction does not subject defendant to Megan's Law registration unless it involved an underlying sexual offense). Still, there can be no doubt that the reference in N.J.S.A. 9:6-1 to "debauch[ing] or endanger[ing] or degrad[ing] the morals of the child" is a reference to prohibited sexual conduct. Thus, by incorporating the child abuse statute as an element of the luring offense, Megan's Law is applied consistent with its legislative purpose.
Accordingly, when R.B. was convicted of 18 U.S.C.A. § 2251(a), he was convicted of conduct that consisted of all of the elements of New Jersey's luring statute. The federal offense requires that a defendant entice or coerce a minor, under the age of eighteen years, to engage in sexually explicit conduct for the purpose of producing a visual depiction of the conduct. 18 U.S.C.A. § 2251(a). Luring requires that the accused attempt to lure or entice a child under the age of eighteen into a structure with a purpose to commit a criminal offense with or against that child. Perez, supra, 177 N.J. at 550, 832 A.2d 303. Here, R.B. enticed two seventeen-year-old boys to his home to engage in videotaped sexual activity that debauched or degraded their morals subjecting them to injury to their moral well-being. His conduct, for which he was convicted in the federal trial, included all of the elements of New Jersey's luring offense, an enumerated offense under Megan's Law.[2]
R.B. further argues that N.J.S.A. 9:6-1 and -3 only criminalize conduct of persons who have a duty of care over children. We disagree. The plain language of N.J.S.A. 9:6-3 includes "any person who shall abuse, be cruel to or neglectful of any child," not just a person with a duty of care over the child. (emphasis added). R.B.'s suggested interpretation ignores this plain language. See State v. Churchdale Leasing, Inc., 115 N.J. 83, 101, 557 A.2d 277 (1989)("[w]hen a statute is clear on its face, a court need not look beyond *743 the statutory terms to determine the legislative intent").
Additional language of N.J.S.A. 9:6-1 and -3 supports this conclusion. The first portion of N.J.S.A. 9:6-3, which refers to parents and others with control over the child, criminalizes abuse, abandonment, cruelty and neglect. The second portion of the statute, which refers to "any person," does not criminalize abandonment. Presumably, the reason being that a person with no duty of care over a child cannot abandon the child. Similarly, while abandonment and neglect of a child can only be committed by a person "having the custody or control of the child," N.J.S.A. 9:6-1 does not require a person to exercise custody or control over a child to commit abuse or cruelty.
We are aware of the statutory definition of "abused child" in Subsection B of Chapter 6 of Title 9; it defines an abused child as "a child under the age of 18 years whose parent, guardian, or other person having his custody and control" commits abuse. N.J.S.A. 9:6-8.9. This definition, however, is not controlling here. It is applicable to the statutory reporting requirement, a separate legislative enactment, and should not be read to limit individuals charged with child abuse to those acting in loco parentis.
R.B. argues the federal offense for which he was convicted and the luring statute are materially different because the transportation of the video across state lines was a material element of the federal offense, and it is not an element of the luring statute. While this argument has some surface appeal, we do not find it to be persuasive.
A similar argument was made in Millan, supra, where the court rejected it. 730 N.Y.S.2d at 394-95. The defendant had pleaded guilty to a violation of 18 U.S.C.A. § 2252A(a)(2), having been charged with using a computer, and ordering tapes that "depicted sex acts involving children ages 5, 6 and 14 years old." Id. at 393. The federal crime required that the child pornography be transported, by mail or computer, in interstate commerce. Id. at 394. The state law required registration as a sex offender if convicted in another jurisdiction of the "essential elements" of a sexual offense in New York. The defendant claimed that because the federal law required "that the offense be committed by the use of the mails or other shipment or transport in interstate commerce, including by computer," and no such requirement existed in any of the state laws pertaining to sexual abuse of children, the essential elements of the two statutes were different. Ibid. The judge disagreed, saying:
[T]he jurisdictional requirement [of the federal law was] in addition to all other elements, and not in substitution therefor. While an essential element necessary for a conviction in New York missing in the Federal prosecution would bar a conviction in such proceeding from consideration under [New York's sex offender registration law], an additional element should not.
[Id. at 394-95.]
We agree. Even though the federal offense here requires transportation of the videotape over state lines, to be convicted of that offense required the jury to find R.B. guilty of the conduct prohibited in New Jersey's luring statute. The additional jurisdictional transportation element does not change that. Accepting R.B.'s argument would require registration of someone who violated the luring statute, but not require registration of someone who was convicted of committing the same conduct as that described in the luring statute, as well as additional illegal conduct, *744 as is the case with the violation of 18 U.S.C.A. § 2251(a). Such an interpretation would be contrary to the remedial purposes of Megan's Law. The following example makes this artificial distinction clear.
A and B enticed two seventeen-year-olds to A's home in New Jersey. They videotaped each other performing illegal sexual acts with the boys. After B left, A, without B's knowledge, transported the videotapes across state lines. A was prosecuted and convicted in federal court of 18 U.S.C.A. § 2251(a). B was prosecuted and convicted in State court of luring. Under R.B.'s argument, only B would have to register as a sex offender in New Jersey. A, who committed an additional illegal act, would not. We cannot conceive that the Legislature would have intended such an anomalous result.
No question that to be convicted of 18 U.S.C.A. § 2251(a), the transportation element is needed. See United States v. Sirois, 87 F.3d 34, 38 (2d Cir.), cert. denied, 519 U.S. 942, 117 S.Ct. 328, 136 L.Ed.2d 241 (1996). Nonetheless, while the conduct prohibited by the federal crime goes farther than the conduct prohibited by the subject New Jersey offense, both statutes were enacted to protect children less than eighteen years of age from sexual exploitation.
A dominant purpose of the federal offense is to prevent illegal sexual activity with children for the production of visual depictions. See id. at 39. The federal law was initially enacted in 1977 as the Protection of Children Against Sexual Exploitation Act, 18 U.S.C.A. §§ 2251 to 2260. When it was amended in 1984, Congress recognized that "thousands of children ... are exploited in the production and distribution of pornographic materials...." Child Protection Act of 1984, Pub.L. No. 98-292, § 2, 98 Stat. 204. When section 2251 was amended in 1996 to redefine child pornography, Congress explained that "`the existence of a traffic in child pornographic images ... inflames the desires of child molesters, pedophiles, and child pornographers who prey on children, thereby increasing the creation and distribution of child pornography....'" United States v. Morales-de Jesus, 372 F.3d 6, 11 (1st Cir.2004)(quoting Child Pornography Protection Act of 1996, Pub.L. No. 104-208, § 1(4), 110 Stat. 3009-26). Underlying the statutory framework was Congress's concern "about the extensive child exploitation industry." Id. at 18.
Likewise, the luring statute criminalizes "`the early stages of what may develop into kidnapping or a sex offense.'" Perez, supra, 177 N.J. at 548, 832 A.2d 303 (quoting Cannel, supra, comment 1 on N.J.S.A. 2C:13-6) (emphasis added). And the child abuse statue, N.J.S.A. 9:6-1, prohibits indecent, immoral or unlawful acts in the presence of a child. The purpose of this statute is to protect children less than eighteen years of age. Thus, the State and federal offenses have the same underlying purposes: to limit the sexual exploitation of children.
R.B. also claims that because N.J.S.A. 2C:24-4 applies only to conduct with persons under sixteen years old, it conflicts with the Title 9 offense, which is applicable to persons under eighteen years of age, consequently denying him fair notice that his conduct was forbidden. We are not convinced.
To be sure, a potential registrant under Megan's Law is entitled to procedures that are constitutionally sufficient. See Doe, supra, 142 N.J. at 99, 662 A.2d 367. The registrant is entitled to "fair notice that his conduct is forbidden and punishable by certain penalties." In re DeMarco, 83 N.J. 25, 37, 414 A.2d 1339 (1980). R.B. *745 had that notice. He could not have been convicted of violating 18 U.S.C.A. § 2251(a) had he not enticed or coerced the two seventeen-year-old boys to engage in sexually explicit conduct, a violation of New Jersey law as codified in N.J.S.A. 9:6-1 and -3 and N.J.S.A. 2C:13-6.
Both the Title 9 offense and the Title 2C offense are directed at the abuse and endangerment of children. That one is only applicable to children under sixteen, while the other applies if the child is under eighteen, does not result in any ambiguity as to a potential defendant's conduct. N.J.S.A. 9:6-1 is clear: it prohibits abuse and cruelty towards persons under eighteen years old. Simply because N.J.S.A. 2C:24-4 overlaps with N.J.S.A. 9:6-1 does not render either law ineffective. As long as an overlapping criminal provision "clearly define[s] the conduct prohibited and the punishment authorized, the notice requirements of the Due Process Clause are satisfied." United States v. Batchelder, 442 U.S. 114, 123, 99 S.Ct. 2198, 2204, 60 L. Ed.2d 755, 764 (1979); State v. Kittrell, 145 N.J. 112, 129-30, 678 A.2d 209 (1996); State v. Medina, 349 N.J.Super. 108, 123-26, 793 A.2d 68 (App.Div.), certif. denied, 174 N.J. 193, 803 A.2d 1165 (2002); State v. Pessolano, 343 N.J.Super. 464, 474-76, 778 A.2d 1153 (App.Div.)(conduct that violated provisions of 2C and provisions of unemployment compensation law, Title 43, may be prosecuted under either title), certif. denied, 170 N.J. 210, 785 A.2d 438 (2001).
Affirmed.
NOTES
[1] The record on appeal does not include transcripts of the evidentiary portion of defendant's federal trial or a copy of the federal indictment. The record does contain substantial portions of the sentencing transcript and a letter opinion from the trial judge dated May 27, 1998, addressing R.B.'s application to have his sentence reduced.
[2] Although child abuse under N.J.S.A. 9:6-1 is not an enumerated offense under Megan's Law, an argument can be made that it too is "similar to" Megan's Law's enumerated offenses; "similar" offenses are not limited to convictions in foreign convictions, but also include convictions for offenses under the laws of "this State." N.J.S.A. 2C:7-2b(3). We do not reach this issue, however, because it is not necessary to do so for our decision.