**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0436-24
                          A-2145-24

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

NORMAN MILLNER,

     Defendant-Appellant.

_____

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

SHAQUAN M. GREGG,

     Defendant-Appellant.

_____

> **APPROVED FOR PUBLICATION**
> **February 23, 2026**
> **APPELLATE DIVISION**

Argued October 8, 2025 – Decided February 23, 2026

Before Judges Currier, Smith and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 24-01-0095, and from an interlocutory order of the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 24-08-1097.

Michael R. Noveck, Deputy Public Defender, argued the cause for appellants (Jennifer N. Sellitti, Public Defender, attorney; Michael R. Noveck, of counsel and on the briefs).

Kaili E. Matthews, Deputy Attorney General, argued the cause for respondent in A-0436-24 (Matthew J. Platkin, Attorney General, attorney; Debra G. Simms, Deputy Attorney General, of counsel and on the brief).

Colleen Kristan Signorelli, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent in A-2145-24 (Wayne Mello, Acting Hudson County Prosecutor; Colleen Kristan Signorelli, on the brief).

The opinion of the court was delivered by

SMITH, J.A.D.

In these back-to-back appeals, we consider, for the first time, the State's statutory duty to find that an out-of-state sex offender's crime is similar to a New Jersey Megan's Law offense before charging that person with failing to register in New Jersey. In both cases, the out-of-state offender did not inform their home state that they were relocating to New Jersey.

The appeals arise from trial court orders denying each defendant's motion to dismiss their indictment under two different failing-to-register statutes.[1] Defendants were convicted of sexual offenses in South Carolina and New York, respectively. They were required to register as sex offenders in

---

[1] N.J.S.A. 2C:7-2(a)(3); N.J.S.A. 2C:7-2(c)(3).

those states. Defendants then independently moved to New Jersey without informing their supervising authorities in South Carolina or New York. They were each then arrested on separate and unrelated charges. In each instance, police discovered they were out-of-state sex offenders, who had failed to register in New Jersey. Therefore, they were charged with violating the statute.

In 2024, separate grand juries indicted Millner for failure to register in the third degree, N.J.S.A. 2C:7-2(a)(3), and Gregg for failure to notify police of a change in address, N.J.S.A. 2C:7-2(c)(3). Each defendant moved to dismiss the indictments. Among other things, defendants argued that the State failed to conduct the threshold legal analysis required under N.J.S.A. 2C:7-2(b)(3) to determine whether defendants' sexual offenses were "similar to" a New Jersey Megan's Law offense. Defendants contended that this analysis was a necessary condition precedent to their obligation to register as a sex offender in New Jersey. The trial court rejected defendants' arguments and denied the motions. We granted Gregg's leave to appeal. Millner pled guilty to the lesser charge of obstructing administration of law or other governmental function, N.J.S.A. 2C:29-1(a). The court sentenced him to time served and fines. After Gregg appealed, we listed the matters back-to-back and now consider them in a single opinion.

3

On appeal, defendants' main argument is that the State failed to present competent evidence to satisfy either element of the failure to register charge under N.J.S.A. 2C:7-2(a)(3) and (c)(3). As part of that theory, they renew their argument that the State failed to make an initial determination concerning the similarity between their out-of-state charges and a New Jersey Megan's Law offense under N.J.S.A. 2C:7-2(b)(3).

We hold that an out-of-state sex offender's requirement to register in the state where they have been convicted does not, by operation of law, eliminate the Legislature's clear due process mandate in N.J.S.A. 2C:7-2(b)(3). That mandate requires the State to find that an out-of-state sex offender's crime is similar to a New Jersey Megan's Law offense prior to charging that out-of-state offender with failure to register in New Jersey. If the State determines that the offender's out-of-state crime is similar to a New Jersey Megan's Law offense, then the offender has a right to challenge that determination in the Law Division, before being charged. See Matter of A.A., 461 N.J. Super. 385, 390 (App. Div. 2019). The out-of-state offender's failure to notify the supervising authorities of their home state prior to relocating to New Jersey does not overcome the due process mandate established by our Legislature prior to being charged in this state.

A-0436-24

For this reason, we reverse the order denying Gregg's motion to dismiss his indictment for failure to notify police of a change in address, N.J.S.A. 2C:7-2(c)(3). We also reverse the order denying the dismissal of Millner's indictment for failure to register, N.J.S.A. 2C:7-2(a)(3), and vacate his conviction and sentence. We remand both matters for proceedings consistent with this opinion.

I.

We first present the applicable statutes to ease the reader's comprehension of the issues.

N.J.S.A. 2C:7-2 addresses the registration of sex offenders in our state. It defines sex offenses and sets forth the requirements for sex offenders, including offenders who committed their crimes in another state, to register with law enforcement agencies here. We cite the parts of the statute relevant to our analysis.

N.J.S.A. 2C:7-2(a)(1) states, "[a] person who has been convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of a sex offense as defined in subsection b. of this section shall register as provided in subsections c. and d. of this section." N.J.S.A. 2C:7-2(a)(3) states, "[a] person who fails to register as required under this act shall be guilty of a crime of the third degree."

A-0436-24

N.J.S.A. 2C:7-2(b)(1) and (2) define sex offenses in New Jersey,[2] while N.J.S.A. 2C:7-2(b)(3) expands the definitions in subsections (1) and (2), stating:

> For the purposes of this act a sex offense shall include the following:
>
> > A conviction, adjudication of delinquency, or acquittal by reason of insanity for an offense similar to any offense enumerated in paragraph (2) or a sentence on the basis of criteria similar to the criteria set forth in paragraph (1) of this subsection entered or imposed under the laws of the United States, this State, or another state.

N.J.S.A. 2C:7-2(c)(3) states

> [a] person moving to or returning to this State from another jurisdiction shall register with the chief law enforcement officer of the municipality in which the person will reside or, if the municipality does not have a local police force, the Superintendent of State Police within 120 days of the effective date of this act or 10 days of first residing in or returning to a municipality in this State, whichever is later . . . .

N.J.S.A. 2C:7-2(d)(1) states

---

[2]  Sex offenses recognized by this state include but are not limited to aggravated sexual assault, sexual assault, aggravated criminal sexual contact, kidnapping a victim younger than sixteen years of age, endangering the welfare of a child by engaging in sexual conduct, luring and enticing, false imprisonment of a minor, knowingly promoting prostitution of a child, or an attempt to commit any of the enumerated offenses.

A-0436-24

[u]pon a change of address, a person shall notify the law enforcement agency with which the person is registered and shall re-register with the appropriate law enforcement agency no less than 10 days before the person intends to first reside at the new address. Upon a change of employment or school enrollment status, a person shall notify the appropriate law enforcement agency no later than five days after any such change. A person who fails to notify the appropriate law enforcement agency of a change of address or status in accordance with this subsection is guilty of a crime of the third degree.

We now consider the record.

A.

Underlying Facts as to Gregg

On November 13, 2023, the Union City Police Department (UCPD) arrested Gregg on charges unrelated to this appeal. During processing, the UCPD discovered he had an outstanding South Carolina warrant for failure to register as a sex offender in that state. The UCPD contacted South Carolina authorities and learned that Gregg was classified there as a "Tier 2 Registered Sex Offender," having been convicted in that state of anally penetrating a three-year-old male and vaginally penetrating a ten-year-old female. On November 14, 2023, the UCPD charged Gregg with failure to change his address within ten days, as required under N.J.S.A. 2C:7-2(d)(1).

During the grand jury proceeding, UCPD Detective Jorge Haber testified that he discovered Gregg was required to register as a sex offender in South

7

Carolina due to his 2009 conviction in that state. Haber testified that Gregg subsequently moved to New Jersey and failed to register as a sex offender here. Haber further testified that a person who relocates to New Jersey from another state is required to register in New Jersey as a Megan's Law offender. After the State presented the text of N.J.S.A. 2C:7-2(a)(3) and N.J.S.A. 2C:7-2(c)(3) to the grand jury, it returned a superseding indictment against Gregg for violation of N.J.S.A. 2C:7-2(d)(1). The trial court later corrected the indicted charge to N.J.S.A. 2C:7-2(c)(3).

Gregg moved to dismiss the indictment. On January 30, 2025, the trial court denied the motion, finding the State met its burden before the grand jury – first, that Gregg was required to register in another state and therefore required to register here; and second, that Gregg knew he had to register in South Carolina and New Jersey yet failed to do so.

On appeal, Gregg argues:

> I. THIS COURT SHOULD REVERSE THE DENIAL OF THE MOTION TO DISMISS THE INDICTMENT BECAUSE THE STATE DID NOT PRESENT COMPETENT EVIDENCE ON EITHER ELEMENT OF THE FAILURE TO REGISTER CHARGE.
>
> > A. The State Failed to Provide Evidence to the Grand Jury That Mr. Gregg Was Required to Register or That He Knowingly Failed to Register.

 A-0436-24

B. The Trial Court's Concerns About Public Safety Cannot Overcome the Plain Language of the Statute and Are Also Unwarranted.

C. Prosecuting Mr. Gregg Under These Circumstances Would Result in Multiple Potential Constitutional Violations.

B.

Underlying Facts as to Millner

On June 14, 2023, the Secaucus Police Department (SPD) arrested Millner on an outstanding warrant for an unrelated charge arising out of Jersey City. The SPD transported Millner to the Jersey City Police Department (JCPD). During processing, the JCPD learned that Millner was a registered sex offender in New York. Thereafter, the JCPD charged Millner with failure to register in New Jersey, N.J.S.A. 2C:7-2(a)(3).

On January 17, 2024, JCPD Officer Annalicia Vega testified before the grand jury. Through her investigation, she learned that Millner was registered as a sex offender in New York due to a 2003 conviction for having a sexual relationship with a sixteen-year-old female when he was thirty-three years old.[3] Vega also testified that Millner told police he moved from New York to

---

[3] N.Y. Penal Law § 130.05.

Jersey City in April 2023 without reporting his move to New York authorities.[4]

A grand juror interjected during Vega's testimony, asking how much time a Megan's Law offender had to report their change of address after moving into New Jersey. Officer Vega responded, "[t]en days."

The State then presented N.J.S.A. 2C:7-2(a)(3) and N.J.S.A. 2C:7-2(d)(1) to the grand jury. A grand juror questioned whether the Megan's Law registration laws are applied uniformly nationwide, or differently between states, however, the grand juror was interrupted by the prosecutor's answer.

> [PROSECUTOR:] Does anyone have any questions on the law?
>
> JUROR: . . . The Megan's Law, it goes national, the whole United States, or it's by the state, because she was – he was in New York and then he moved back to Jersey so that's –
>
> [PROSECUTOR]: Yeah. I'm just seeing if that's a legal or a factual question.
> So, [N.J.S.A.] 2C:7-2(e) states that, "A person required to register under paragraph (1) of subsection b. due to a sentence imposed on the basis of criteria similar to the criteria set forth in paragraph (1) of subsection b. shall verify his address with the appropriate law enforcement agency."
> And [N.J.S.A.] 2C:7-2(c)(3) states that, "A person moving to or returning to this State from

---

[4] Millner disputes that Officer Vega discovered that his sexual offense was one committed out of state and asserts that his attorney was the first to discover this fact and bring it to the trial court's attention. His contention has no bearing on the issues presented here.

another jurisdiction shall register with the chief law enforcement officer of the municipality in which the person will reside or, if the municipality does not have a local police force, the Superintendent of State Police within 120 days of the effective date of this act or [ten] days of first residing in or returning to a municipality in this State, whichever is later."

And the effective [date] of this act was back in 1994.

JUROR: Thanks.

[PROSECUTOR:] Does that answer your question?

JUROR: Hm-hm. Thank you.

The grand jury indicted Millner on one count of failure to register, N.J.S.A. 2C:7-2(a)(3). Millner moved to dismiss the indictment, contending that he was unaware he had to register in New Jersey. However, the court determined that the statute does not expressly include a culpable mental state, and it read the mens rea standard required by N.J.S.A. 2C:2-2(b)(2) and (c)(3) into N.J.S.A. 2C:7-2(a)(3). The court next found that Millner's failure to register was knowing, supporting that finding with Millner's awareness of his obligation to register in New York, an obligation he held for twenty years. Further, the court interpreted N.J.S.A. 2C:7-2(a)(3) to not require notice of the State's "similar to" determination or a hearing to challenge it. The trial court ultimately denied the motion, determining that the State met its burden of proof before the grand jury.

Millner then pled guilty to the lesser charge of obstructing administration of law or other governmental function, N.J.S.A. 2C:29-1(a). The court sentenced him to time served.

On appeal, Millner argues:

I. THIS COURT SHOULD REVERSE THE DENIAL OF THE MOTION TO DISMISS THE INDICTMENT BECAUSE THE STATE DID NOT PRESENT COMPETENT EVIDENCE ON EITHER ELEMENT OF THE FAILURE TO REGISTER CHARGE.

A. Because the State Did Not Conduct the Notice and Hearing Process Required by [Matter of] A.A., 461 N.J. 385 (App. Div. 2019), Prior to Indicting Mr. Millner, It Failed to Provide Evidence to the Grand Jury That Mr. Millner Was Required to Register or That He Knowingly Failed to Register.

B. The State's Concerns About Public Safety Cannot Overcome the Plain Language of the Statute and Are Also Unwarranted.

C. Prosecuting Mr. Millner Under These Circumstances Would Result in Multiple Potential Constitutional Violations.

II. ALTERNATIVELY, THE INDICTMENT SHOULD BE DISMISSED BECAUSE OF THE STATE'S MISLEADING AND INACCURATE INSTRUCTIONS.

A-0436-24

II.

A.

"A trial court's denial of a motion to dismiss an indictment is reviewed for abuse of discretion." State v. Bell, 241 N.J. 552, 561 (2020) (citing State v. Twiggs, 233 N.J. 513, 544 (2018)). "[A]n abuse of discretion 'arises when a decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis."'" State v. R.Y., 242 N.J. 48, 65 (2020) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)). The trial court is afforded deference, and its decision should be reversed on appeal "only [if] it clearly appears that the exercise of discretion was mistaken." Bell, 241 N.J. at 561 (quoting State v. Abbati, 99 N.J. 418, 436 (1985)). Legal questions arising out of the same appeal are instead reviewed de novo. Twiggs, 233 N.J. at 532.

B.

Our jurisprudence has long recognized "the grand jury's independence" in their role as a "democratic safeguard to our judicial system." State v. Shaw, 241 N.J. 223, 238-39 (2020) (first quoting State v. Hogan, 144 N.J. 216, 228 (1996); and then quoting State v. Fortin, 178 N.J. 540, 638 (2004)). The grand jury's purpose is to "determine whether the State has established a prima facie case that a crime has been committed and that the accused has committed it."

13

Hogan, 144 N.J. at 227. As an "arm of the court," "courts are reluctant to intercede directly in the indictment process." Shaw, 241 N.J. at 229-30. A grand jury's indictment "should be disturbed only on the 'clearest and plainest ground[s],'" and "when the indictment is manifestly deficient or palpably defective." Id. at 239 (first quoting State v. Perry, 124 N.J. 128, 168 (1991); and then quoting Hogan, 144 N.J. at 229). If the State fails to present "some evidence establishing each element of the crime," however, the trial court must dismiss the indictment. State v. Feliciano, 224 N.J. 351, 380 (2016).

## III.

Defendants contend the trial court erred by not dismissing the indictments because the State failed to provide some evidence for each element of the crimes charged. We consider the record through the lens of the applicable law.

## A.

Defendants were both indicted for failure to register, N.J.S.A. 2C:7-2(a)(3) and (c)(3). To secure those indictments, the State had to present some evidence for each element of the crime of failing to register. The elements are: (1) defendants were required to register, and (2) defendants knowingly failed to register. Model Jury Charges (Criminal), "Failure to Register as a Sex Offender (N.J.S.A. 2C:7-2(a))" (approved June 9, 1997). The State contends

14

the indictments were proper as defendants were convicted of a sex offense in another state and therefore required to register here under N.J.S.A. 2C:7-2(b)(3) upon relocation. They also argue that the second element of the statute was satisfied because each defendant knew they were required to register in their former state. We are unpersuaded.

Section (b)(3) addresses the procedure for potential registration of individuals who are registered as sex offenders in other states and have since relocated to New Jersey. A plain reading of subsection (b)(3) shows that, for the State to determine that an out-of-state sex offender must register in New Jersey, it must find that the out-of-state offense is "similar to" a sexual offense under New Jersey law. While the statute does not define the phrase "similar to," we have held that an out-of-state conviction requires registration in New Jersey "so long as the conviction being compared to a Megan's Law enumerated offense contains the same essential elements, and the underlying purposes of the crimes are consonant." In re Registrant R.B., 376 N.J. Super. 451, 464 (App. Div. 2005).

We have also held that an out-of-state sex "offender is entitled to notice and an opportunity to challenge [a New Jersey Megan's Law obligation] by filing a motion with the judge. The motion triggers a summary hearing, wherein the judge addresses the legal question of whether the out-of-state

15

conviction is 'similar to' a qualifying conviction under Megan's Law." A.A., 461 N.J. Super. at 390.

In A.A., a New York probation office sought to transfer the defendant's probation to his home state of New Jersey. Id. at 392. The New York probation office communicated with New Jersey authorities and sought an assistant prosecutor's determination to establish whether the defendant was required to register in New Jersey. Ibid. Once the assistant prosecutor determined that the defendant's out-of-state offense was similar to a New Jersey Megan's Law offense, the New York probation officer notified the defendant of his status before his probation was transferred, and the defendant was then able to exercise his statutory right under N.J.S.A. 2C:7-2(b)(3) to challenge the determination in the New Jersey Superior Court. Id. at 391-92. The trial court conducted a summary hearing where it found defendant's New York offense had the same essential elements of, and was similar to, a New Jersey Megan's Law offense, requiring registration. Id. at 402, 405. We affirmed, concluding that the record showed that proper substantive and procedural steps were followed by the State in reaching the "similar to" determination, and that the trial court's finding that the defendant's New York offense was similar to a New Jersey Megan's Law crime was well supported by the record. Id. at 406.

A-0436-24

We now apply the principles of A.A. to the matters before us.

B.

In Gregg, the trial court determined that Gregg's South Carolina obligation to register for his sex crimes in that state created an obligation, as a matter of law, to register in New Jersey. The trial court further concluded that the assistant prosecutor did not have to conduct a "similar to" analysis under N.J.S.A. 2C:7-2(b)(3). We disagree. N.J.S.A. 2C:7-2(b)(3) does not negate the State's obligation to conduct the "similar to" analysis based on whether a defendant was required to register, or not, in another state. The trial court's narrow reading of subsection (c)(3) disregards this step. The Legislature expressly required that the State determine that an out-of-state sex offender's crimes are "similar to" a New Jersey Megan's Law sex offense before that out-of-state offender can be charged with a violation of N.J.S.A. 2C:7-2(c)(3). We conclude the trial court's denial of Gregg's motion to dismiss the indictment was error.

In Millner, the trial court found that the State did not conduct the statutory analysis, but, nevertheless, decided that Millner was required to register as a sex offender in New Jersey based solely on his previous obligation to register in New York. The trial court further found that the State's failure to conduct the analysis was not intentional, did not "infringe

17

upon the grand jury's decision-making function," and that "any alleged inaccuracies . . . [were] not sufficient to [justify] dismissal of the warrant." The court was persuaded by the State's argument that had the "similar to" analysis been done, it would have determined that Millner was required to register in New Jersey for the sexual offense committed in New York.

For the reasons stated, we disagree with the trial court's approach, the Legislature clearly imposed a duty upon the State in subsection (b)(3) to perform the "similar to" analysis. The trial court improperly exercised its discretion in denying the motion to dismiss the indictment.

IV.

Having concluded that the trial court erred when it denied the dismissal motions, we address certain policy concerns regarding the detection of prospective registrants entering New Jersey from another jurisdiction.

Our Supreme Court has acknowledged the goals of Megan's Law "which focus on the need to protect society from sex offenders by disseminating critical information to the public." State in Int. of C.K., 233 N.J. 44, 65 (2018). N.J.S.A. 2C:7-2 ensures this goal is met once the State determines the crime committed out of state aligns with a New Jersey Megan's Law offense. Once that step is completed, the sex offender may elect to challenge the "similar to" determination as outlined in A.A. If the offender chooses not to

18

challenge, or the challenge is unsuccessful, they have ten days to register in New Jersey or risk prosecution.

The record shows that each defendant arrived in New Jersey as a convicted out-of-state sex offender. Because they did not notify their former states that they were relocating to New Jersey, and they did not self-report to New Jersey authorities, they were present in this state unregistered, and essentially "undetected." While in New Jersey, each defendant was arrested on unrelated charges which led to the discovery of their out-of-state sex crimes convictions. The State was unaware of defendants' presence until they were arrested on unrelated charges and background checks were done.

These appeals, involving previously undetected out-of-state sex offenders, raise an important question: Can the State bypass its legislatively imposed duty to make a "similar to" determination for an out-of-state offender when that offender fails to seek proper authorization to leave their home state and secure permission to come to New Jersey? Put another way, does the less-than-diligent out-of-state offender, who fails to seek proper authorization to leave their home state and secure permission to come to New Jersey, waive their right to challenge a "similar to" determination before being charged here?

In keeping with our reasoning above, we conclude that the answer is no. The State, bound by the requirements of N.J.S.A. 2C:7-2(b)(3), cannot ignore

its duty to perform a "similar to" analysis, even for those offenders who fail to follow proper registration procedure to enter the state. Under N.J.S.A. 2C:7-2(b)(3), it is clear that the State must complete this analysis to establish an out-of-state offender's obligation to register in New Jersey, prior to indictment, regardless of the circumstances under which the individual is detected.

Indicting defendants before affording them the opportunity to challenge whether their out-of-state conviction is similar to a New Jersey Megan's Law crime offends principles of due process and the statute itself. As with any crime, the State retains the burden to develop cause for indictment for failing to register under N.J.S.A. 2C:7-2 prior to filing charges.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

20

A-0436-24