In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

Nos. 15-2373 & 15-2374

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JUSTIN EDWARDS,

*Defendant-Appellant.*

———————————

Appeals from the United States District Court
for the Western District of Wisconsin.
Nos. 13-cr-56 & 14-cr-102 — **Barbara B. Crabb**, *Judge.*

———————————

No. 15-2552

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RYAN POULIOT,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 14-cr–104 — **James D. Peterson**, *Judge.*

_____

ARGUED DECEMBER 10, 2015— DECIDED SEPTEMBER 8, 2016

_____

Before POSNER, MANION, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. In separate cases Justin Edwards and Ryan Pouliot pleaded guilty to firearms offenses that carry an enhanced base offense level under the Sentencing Guidelines if the defendant has a prior conviction for a "crime of violence." *See* U.S.S.G. § 2K2.1(a). At the time they were sentenced, the version of the Guidelines then in effect defined "crime of violence" to include "any offense under federal or state law … that … is burglary of a dwelling." *Id.* § 4B1.2(a)(2).[1] Both defendants have prior Wisconsin convictions for burglary; the district judge in each case counted the convictions as crime-of-violence predicates and applied the higher offense level. The defendants challenge the enhancement, arguing that a conviction under Wisconsin's burglary statute cannot serve as a predicate offense under § 2K2.1(a). Because their appeals raise the same issue, we've consolidated them for decision.

To determine whether a prior conviction counts as a crime of violence requires a categorical approach that focuses on the statutory definition of the crime of conviction. If

---

[1] All references to the Sentencing Guidelines are to the 2014 version in effect when Edwards and Pouliot were sentenced. The Sentencing Commission has since amended § 4B1.2(a)(2), removing burglary of a dwelling from the list of offenses that qualify as a crime of violence; the amendment became effective on August 1, 2016. *See* 81 Fed. Reg. 4741, 4742 (2016).

state law defines the offense more broadly than the Guidelines, the prior conviction doesn't qualify as a crime of violence, even if the defendant's *conduct* satisfies all of the elements of the Guidelines offense. In a narrow set of circumstances, the sentencing court may go one step beyond the statute itself. When a single statute creates multiple offenses, the court may consult a limited universe of documents to determine which offense the defendant was convicted of committing. This inquiry is called the "modified categorical approach," but it only applies to "divisible" statutes. The Supreme Court recently clarified that a statute is considered divisible only if it creates multiple offenses by setting forth alternative *elements*. *See United States v. Mathis*, 136 S. Ct. 2243 (2016).

Wisconsin defines burglary more broadly than the Guidelines: The relevant statute prohibits burglary of a "building or dwelling." WIS. STAT. § 943.10(1m)(a). The judges in both cases consulted the state charging documents to determine whether Edwards and Pouliot were convicted of burglary of a dwelling as required by § 4B1.2(a)(2). The documents revealed that both were charged with burgling a dwelling, so the judges applied a higher offense level under § 2K2.1(a).

After *Mathis*, however, it's clear that this recourse to state-court charging documents was improper. The relevant subsection of Wisconsin's burglary statute sets forth alternative *means* of satisfying the location element of the state's burglary offense. Accordingly, we vacate the sentences and remand for resentencing.

## I. Background

**A. Edwards**

In 2013 Justin Edwards was charged with possessing a firearm as a felon, *see* 18 U.S.C. § 922(g)(1), and possessing a short-barreled shotgun, *see* 26 U.S.C. §§ 5841, 5845(a)(2), 5861(d). He was released on bond while an appeal of an evidentiary ruling was pending and quickly racked up multiple state-law charges in three separate cases. In September 2014 Edwards was again arrested and charged with two more federal gun crimes—another charge of possessing a firearm as a felon and a charge of possessing a firearm as a drug user, *see* 18 U.S.C. § 922(g)(3). Plea agreements were reached in both the 2013 and the 2014 federal cases.

Two disputes arose at sentencing. First, the judge determined that Edwards's prior Wisconsin conviction for burglary of a "building or dwelling," WIS. STAT. § 943.10(1m)(a), qualified as a crime of violence under § 4B1.2(a)(2) of the Guidelines. To make that determination, the judge consulted the state charging documents—a criminal complaint and information. Both documents stated that Edwards "intentionally enter[ed] a dwelling, without the consent of the person in lawful possession of the place, and with intent to steal." On that basis, and over Edwards's objection, the judge applied a higher base offense level under § 2K2.1(a)(2).

Second, and again over Edwards's objection, the judge declined to apply an acceptance-of-responsibility reduction under § 3E1.1 of the Guidelines because Edwards committed multiple criminal offenses while on pretrial release for the 2013 charges. With the crime-of-violence enhancement and without an acceptance-of-responsibility reduction, the

Guidelines range was 92–115 months. The judge imposed a sentence of 92 months, the bottom of the range.

### B. Pouliot

In an unrelated case in the same district, Ryan Pouliot was charged with possessing a firearm and ammunition as a felon, and he too pleaded guilty. At sentencing the judge determined that Pouliot's prior Wisconsin burglary conviction qualified as a crime of violence under § 4B1.2(a)(2) of the Guidelines. As in Edwards's case, the judge consulted the charging documents in the underlying state proceedings to make that determination; those documents revealed that Pouliot had been charged with burgling a dwelling. The judge accordingly rejected Pouliot's objection and applied the crime-of-violence enhancement under § 2K2.1(a)(3), which yielded a Guidelines range of 84–105 months. The judge imposed a below-range sentence of 72 months.

## II. Discussion

Edwards and Pouliot challenge the application of the crime-of-violence enhancement based on their Wisconsin burglary convictions. Edwards also challenges the judge's refusal to apply an acceptance-of-responsibility reduction under § 3E1.1.

### A. Crime-of-Violence Enhancement

Whether a prior conviction counts as a crime of violence is a question of law that we review de novo. *United States v. Woods*, 576 F.3d 400, 408 (7th Cir. 2009). The version of the Guidelines in effect when the defendants were sentenced listed "burglary of a dwelling" as a qualifying "crime of violence." U.S.S.G. § 4B1.2(a)(2). The defendants have prior convictions for burglary in violation of section 943.10(1m)(a)

of the Wisconsin Statutes, but that statute is broader than the Guidelines; it makes burglary of a "building or dwelling" a Class F felony. The issue here is whether subsection (a) of the Wisconsin burglary statute is divisible. If it is, then it was appropriate for the judges in these cases to consult the state charging documents. If it's not divisible, then a conviction under Wisconsin's burglary statute doesn't qualify as a crime of violence for purposes of the Sentencing Guidelines.

### 1. *Divisibility*

The concept of divisibility is an outgrowth of the categorical approach that governs the crime-of-violence determination under the Sentencing Guidelines.[2] *See Mathis*, 136 S. Ct. at 2248–49. The categorical approach disregards the facts underlying a prior conviction, focusing instead on the statutory definition of the offense. *See id.* at 2248 (citing *Taylor v. United States*, 495 U.S. 575, 600–01 (1990)). If the statutory definition is the same as (or narrower than) the Guidelines definition, the prior conviction can be counted as a crime of violence. But if a statute defines an offense more broadly than the Guidelines, the prior conviction doesn't count, "even if the defendant's actual conduct (*i.e.*, the facts

---

[2] The categorical approach was developed in the context of the Armed Career Criminal Act ("ACCA"), which enhances the sentence of a felon who has three prior convictions for a "violent felony." 18 U.S.C. § 924(e). The ACCA definition of a violent felony is "closely analogous" to the Guidelines definition of a crime of violence. *United States v. Woods*, 576 F.3d 400, 403–04 (7th Cir. 2009). Accordingly, we've held that the categorical approach applies when determining if a prior conviction qualifies as a crime of violence under the Sentencing Guidelines, *see id.*, and "we refer to cases dealing with the ACCA and the career offender guideline provision interchangeably," *United States v. Taylor*, 630 F.3d 629, 633 n.2 (7th Cir. 2010).

of the crime)" would fit within the Guidelines definition. *Id.* Consequently, in most cases the sentencing judge's inquiry is limited to "the fact of conviction and the statutory definition of the prior offense." *Taylor*, 495 U.S. at 602.

We say "most cases" because the categorical approach "may permit the sentencing court to go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements" of the Guidelines offense. *Id.* This occurs when a statute is "divisible," meaning it "sets out one or more elements of the offense in the alternative." *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013). Under these circumstances a court may "consult a limited class of documents … to determine which alternative formed the basis of the defendant's prior conviction." *Id.* The documents that may be consulted include charging papers, jury instructions, and any available plea agreements or plea colloquies. *Shepard v. United States*, 544 U.S. 13, 20 (2005). This variant of the categorical approach has been dubbed the "modified categorical approach." *Descamps*, 133 S. Ct. at 2281.

Until recently, the circuits were split regarding what qualifies as a divisible statute. Some had held that any statute containing a list of alternatives is divisible, while others distinguished between statutes that list alternative elements (thus creating multiple offenses) and statutes that create a single offense with alternative means of satisfying an element of that offense. *See Mathis*, 136 S. Ct. at 2250–51, 2251 n.1. The Supreme Court resolved the split in *Mathis*, holding that a statute is divisible only if it creates multiple offenses by listing one or more alternative *elements*. *Id.* at 2253–54. A statute that defines a single offense with alterna-

tive *means* of satisfying a particular element is indivisible and therefore not subject to the modified categorical approach. *Id.* at 2251.[3]

### 2. *Wisconsin's Burglary Statute*

With this framework in place, we proceed to the central question presented here: Is subsection (a) of Wisconsin's burglary statute divisible? As we've just explained, the answer depends on whether subsection (a) defines multiple offenses by listing alternative elements or instead lists alternative means of committing a single offense. "Elements are the constituent parts of a crime's legal definition—the

---

[3] Like the Supreme Court's other decisions addressing the categorical approach, *Mathis* dealt with whether a prior conviction qualifies as a violent felony under the ACCA. The Court highlighted three reasons for its "adher[ence] to an elements-only inquiry": (1) the ACCA's use of the word "conviction" mandates it; (2) a contrary approach would "raise serious Sixth Amendment concerns"; and (3) "an elements-focus avoids unfairness to defendants" by preventing factual admissions that a defendant had no reason to contest in a prior proceeding from serving as the basis for an enhanced penalty. *United States v. Mathis*, 136 S. Ct. 2243, 2252–53 (2016). After *United States v. Booker*, 543 U.S. 220 (2005), the Guidelines no longer raise the same Sixth Amendment concerns as the ACCA. But the Guidelines do use the same language of "conviction" and create the same potential for unfairness to defendants in sentencing. *Cf. United States v. Jones*, 2016 WL 3923838, at *4 (2d Cir. July 21, 2016) (applying the reasoning of *Mathis* to the career-offender guideline).

And *Mathis* itself indicates that its holding applies in the immigration context, where Sixth Amendment concerns are similarly immaterial. 136 S. Ct. at 2253 n.3; *accord Gomez-Perez v. Lynch*, 2016 WL 3709757, at *2 & n.4 (5th Cir. July 11, 2016). These reasons, along with our precedents treating ACCA and Guidelines cases interchangeably for purposes of the categorical approach, lead us to conclude that *Mathis* applies with equal force in the context of the career-offender guideline.

things the prosecution must prove to sustain a conviction." *Mathis*, 136 S. Ct. at 2248 (internal quotation marks omitted). Means, in contrast, are legally extraneous facts that "need neither be found by a jury nor admitted by a defendant." *Id.*

The distinction is both familiar and important because "[c]alling a particular kind of fact an 'element' carries certain legal consequences." *Richardson v. United* States, 526 U.S. 813, 817 (1999). "[A] jury in a federal criminal case cannot convict unless it unanimously finds that the Government has proved each element" of an offense, but all members of the jury need not agree on "which of several possible means the defendant used to commit an element of the crime." *Id.*; *see also Alleyne v. United States*, 133 S. Ct. 2151, 2156 (2013). Multiplicity challenges likewise turn on the elements of the charged offenses: The Double Jeopardy Clause permits successive punishment or prosecution of multiple offenses arising out of the same conduct only if each offense contains a unique element. *See United States v. Dixon*, 509 U.S. 688, 696, 703–04 (1993) (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)); *accord United States v. Larsen*, 615 F.3d 780, 788 (7th Cir. 2010) ("In multiplicity challenges the *elements* of each offense—not the specific offense conduct—determine whether two offenses are the same for purposes of double jeopardy."). After *Mathis* the divisibility of a statute rests on the same distinction between elements and means. 136 S. Ct. at 2254–55.

*Mathis* offers some practical guidance for drawing the distinction in this particular context. First, a decision by the state supreme court authoritatively construing the relevant statute will both begin and end the inquiry. *Id.* at 2256; *see also Schad v. Arizona*, 501 U.S. 624, 636 (1991) ("If a State's

courts have determined that certain statutory alternatives are mere means of committing a single offense, rather than independent elements of the crime, we simply are not at liberty to ignore that determination … ."). Absent a controlling state-court decision, the text and structure of the statute itself may provide the answer. *Mathis*, 136 S. Ct. at 2256; *see also Schad*, 501 U.S. at 636 ("The question whether statutory alternatives constitute independent elements of the offense … is a substantial question of statutory construction."). Failing those "authoritative sources of state law," sentencing courts may look to "the record of a prior conviction itself" for the limited purpose of distinguishing between elements and means. *Mathis*, 136 S. Ct. at 2256–57.

The parties haven't directed us to a decision of the Wisconsin Supreme Court that construes subsection (a) of the state's burglary statute, and our own search has yielded none. Accordingly, we're on our own and turn first to the text and structure of the statute itself. Section 943.10(1m) provides:

> Whoever intentionally enters any of the following places without the consent of the person in lawful possession and with intent to steal or commit a felony in such place is guilty of a Class F felony:
>
> (a) Any building or dwelling; or
>
> (b) An enclosed railroad car; or
>
> (c) An enclosed portion of any ship or vessel; or
>
> (d) A locked enclosed cargo portion of a truck or trailer; or

(e) A motor home or other motorized type of home or a trailer home, whether or not any person is living in any such home; or

(f) A room within any of the above.

The statute thus criminalizes the act of intentionally entering certain types of locations without consent and with the intent to steal or commit a felony. Subsections (a)–(f) describe the various locations that the statute covers, any one of which will satisfy the location requirement for burglary. The phrase "building or dwelling" is one of several disjunctively phrased lists that appear within these subsections.

The statute's text and structure suggest that the components of each subsection are merely "illustrative examples" of particular location types. *Mathis*, 136 S. Ct. at 2256. That's clearly true for subsections (c)–(e) given the virtually synonymous terms contained within these subsections. *See, e.g.*, *Manson v. State*, 304 N.W.2d 729, 736 (Wis. 1981) ("If the [statutory] alternatives are similar, one crime was probably intended."). There's no plausible argument that the Wisconsin legislature intended to create a distinct offense for entering a "ship" as opposed to a "vessel," a "truck" as opposed to a "trailer," or a "motor home or other motorized home" as opposed to a "trailer home." These subsections simply identify several different ways of describing a particular location.

To put the question in double-jeopardy terms: The statutory structure does not suggest that each subsection creates multiple crimes; a ship is a particular type of vessel, but a

prosecutor couldn't charge two counts of burglary for a single act of breaking into a ship.

Read in this context, the phrase "building or dwelling" in subsection (a) is best understood as likewise providing two examples of enclosed structures rather than creating two separate offenses. Reinforcing that conclusion is the fact that those alternatives carry the same punishment. *Cf. Mathis*, 136 S. Ct. at 2256 ("If statutory alternatives carry different punishments, then under *Apprendi* they must be elements."). On its face subsection (a) of Wisconsin's burglary statute thus identifies two *means* of committing a single crime rather than alternative *elements*.

To the extent that we have lingering uncertainties about whether "building" and "dwelling" are elements or means, *Mathis* suggests that we resolve them by looking to the record of the defendant's prior conviction. Because both defendants pleaded guilty in the underlying state-court proceedings, the record is limited to the charging documents and in Edwards's case, the plea colloquy. *See Descamps*, 133 S. Ct. at 2285 n.2 (noting that courts may look to any of the *Shepard* documents, including the "indictment, jury instructions, plea colloquy, and plea agreement"). The Court explained in *Descamps* (and reiterated in *Mathis*) that these documents will likely "reflect the crime's elements." *Id.*; *Mathis*, 136 S. Ct. at 2256–57.

The *Shepard* documents are of little use here. *Cf. Mathis*, 136 S. Ct. at 2257 ("Of course, such record materials will not in every case speak plainly … ."). Under Wisconsin law the complaint and information, which are the documents that initiate proceedings against a criminal defendant, must allege every element of the crime charged, but they may also

(and usually do) include additional facts that need not be proved to the jury beyond a reasonable doubt. *See State v. Baldwin*, 304 N.W.2d 742, 746 (Wis. 1981) ("[W]hile a charging document must always allege facts necessary to support a conviction, it does not follow that a conviction requires proof of every fact alleged in a complaint."). Similarly, the recitation of a crime's elements during a plea colloquy may include as much or as little factual detail as necessary for the defendant to understand the nature of the charges against him. *See State v. Brown*, 716 N.W.2d 906, 2006 WI 100, ¶ 52. Indeed, the Wisconsin Supreme Court has "encourage[d] circuit court judges to translate legal generalities into factual specifics when necessary to ensure the defendant's understanding of the charges." *Id.* ¶¶ 56, 58. The upshot of these rules is that in Wisconsin neither the charging documents nor a plea colloquy will necessarily reflect *only* the elements of a crime.

These two appeals illustrate a practical difficulty that can arise in applying the *Mathis/Descamps* rule. In the state-court proceedings against Edwards and Pouliot, the complaint and information specify that each defendant was charged with burgling a dwelling. If Wisconsin law required that all facts alleged in the charging documents be proved to a jury beyond a reasonable doubt, we could conclude that "dwelling" is an element. But because the charging documents may allege additional facts, the inclusion of "dwelling" tells us nothing about whether it's an element of burglary or simply a factual description of the type of enclosed structure the defendant entered. Edwards's plea colloquy is similarly unhelpful: It includes a recitation of the "elements of burglary *as they apply to* [*Edwards's*] *case*." (Emphasis added.) In

short, the record materials simply do not speak to whether "building" and "dwelling" are elements or means.

Left with only the text and structure of Wisconsin's burglary statute, we conclude that subsection (a) lists alternative means rather than elements and is therefore indivisible. That conclusion resolves this appeal: The elements of the crime of conviction "cover a greater swath of conduct" than the elements of the Guidelines offense, so the defendants' burglary convictions cannot serve as predicate offenses under § 2K2.1(a). *Mathis*, 136 S. Ct. at 2251. Edwards and Pouliot are entitled to resentencing.

**B. Acceptance-of-Responsibility Reduction**

Edwards raises an additional challenge to his sentence. He argues that the district judge erred by refusing to apply an acceptance-of-responsibility reduction under § 3E1.1 of the Guidelines. We review the judge's decision for clear error. *United States v. Seller*, 595 F.3d 791, 793 (7th Cir. 2010).

Section 3E1.1(a) calls for a two-level reduction in the defendant's offense level "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." Application note 3 explains that entry of a guilty plea before trial and truthfully admitting any additional relevant conduct "will constitute significant evidence of acceptance of responsibility" but "may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility." § 3E1.1 cmt. n.3. Continued criminal activity is the sort of conduct that is inconsistent with acceptance of responsibility. *United States v. McDonald*, 22 F.3d 139, 144 (7th Cir. 1994). However, "the Guidelines do not authorize the court to adopt a *per se* rule denying a reduction when a defendant

engages in further criminal activity." *United States v. Bothun*, 424 F.3d 582, 587 (7th Cir. 2005).

Edwards has wisely omitted a challenge to the judge's finding that he continued to engage in criminal activity while on pretrial release for his 2013 offenses. Instead he argues that the judge wrongly thought that this conduct *necessarily* precluded an acceptance-of-responsibility reduction. This argument rests on the following comment by the judge:

> I understand that [Edwards] thinks he should receive the credit because he did cooperate with investigators, he never contested his criminal conduct, and he was arrested without incident. However, the other part of that -- what's required for that reduction is that he voluntarily terminate his criminal conduct and associations and he did not do that.

Edwards argues that the judge's reference to "what's required" for acceptance-of-responsibility credit means that she treated his continued criminal activity as categorically disqualifying.

We disagree. The judge expressly acknowledged that Edwards's guilty plea and admission of other relevant conduct weighed in favor of the downward adjustment. That's enough to satisfy us that she understood the law and considered factors both for and against an acceptance-of-responsibility reduction. *See id.* And given how extensive Edwards's continued criminal activity was, the judge's determination that it outweighed Edwards's cooperation was not clear error.

* * *

For the foregoing reasons, we VACATE the defendants' sentences and REMAND for resentencing.