# RECORD IMPOUNDED

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0678-18T1

IN THE MATTER OF
REGISTRANT A.A.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| **November 15, 2019** |
| **APPELLATE DIVISION** |

Argued October 7, 2019 – Decided November 15, 2019

Before Judges Fasciale, Rothstadt and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. ML-09-07-0111.

James H. Maynard argued the cause for appellant A.A. (Maynard Law Office, LLC, attorneys; James H. Maynard, on the briefs).

Frank J. Ducoat, Special Deputy Attorney General/ Acting Assistant Prosecutor, argued the cause for respondent State of New Jersey (Theodore N. Stephens II, Acting Essex County Prosecutor, attorney; Frank J. Ducoat, of counsel; Maria I. Guerrero, Special Deputy Attorney General/Acting Assistant Prosecutor, on the brief).

The opinion of the court was delivered by

FASCIALE, P.J.A.D.

This appeal requires us to address the general procedure and related due process protections afforded to individuals who committed crimes outside New Jersey when law enforcement allege that those crimes are "similar to" Megan's

Law offenses under N.J.S.A. 2C:7-1 to -23, and therefore require registration in this State.

We hold that a county assistant prosecutor (AP) must first make the "similar to" determination. If the AP imposes a registration obligation, the offender is entitled to notice and an opportunity to challenge that obligation by filing a motion with the judge. The motion triggers a summary hearing, wherein the judge addresses the legal question of whether the out-of-state conviction was "similar to" a qualifying conviction under Megan's Law. In accordance with R.B.,[1] the judge should (1) undertake an element-by-element legal comparison of the criminal codes of New Jersey and the other state; and (2) compare the elements of the crimes with the purposes of the underlying criminal statutes. Consistent with R.B., and to avoid reviewing the elements of the offense in a vacuum, the judge may also examine trustworthy, relevant evidence as to the underlying factual predicate for the out-of-state conviction.

In this case, an AP performed the "similar to" analysis and determined A.A. had a duty to register in New Jersey as a sex offender. A.A. filed a motion to terminate that obligation ab initio, which the judge denied. A.A. appeals from that order.

---

[1] In re Registrant R.B., 376 N.J. Super. 451, 464 (App. Div. 2005).

We conclude the AP correctly performed the "similar to" analysis and determined A.A. had a duty to register. A.A. received notice of that obligation, registered, and challenged the determination in the Law Division. Applying R.B., the judge here properly concluded the New York conviction was "similar to" an enumerated offense under Megan's Law. We therefore affirm.

I.

At all relevant times, A.A. resided in New Jersey. According to a New York pre-sentence investigation report and charging documents, in March 2008, A.A. engaged in sexual communications with an undercover police officer in an internet chatroom, believing the officer to be a fourteen-year-old girl. He then emailed three pictures of his genitals to the undercover police officer. In April 2008, A.A. traveled to a New York mall, intending to meet the underage girl from the chatroom. The police met A.A. there, arrested him, and seized a box of condoms from him.

The New York police charged A.A. with second-degree disseminating indecent material to a minor, New York Penal Law § 235.21(3) (Consol. 2019). In September 2008, he pled guilty to that charge, and in December 2008, the judge entered judgment and sentenced him to five years' probation.

A.A.'s pre-sentence investigation report addressed the transfer of probation from one state to another:

> This offender may be eligible for an interstate [t]ransfer at the discretion of the receiving state. Interstate Compact Rules require that persons sentenced to probation on a sex offense that requires them to register in either the sending or receiving state are NOT entitled to proceed to the receiving state until that state investigates and reporting instructions are issued. The [offender] must remain in [New York] until this process is completed. If the transfer request is rejected, regardless of the [offender's] current residence[,] [the offender] must remain in [New York]. If [the offender] [is] allowed to travel by the receiving state and then that state later rejects the transfer, the offender must return to New York within [fifteen] days.

The same report further stated that, although A.A.'s offense in New York "does not require SORA[2] registration, sex offender conditions of [p]robation are recommended."

New York requested the transfer of A.A.'s probation supervision to New Jersey. In March 2009, a New Jersey County Senior Probation Officer (SPO) provided documentation of A.A.'s New York conviction to a New Jersey AP and requested a determination as to whether A.A. "will be required to register under Megan's Law in our state[.]" The SPO indicated to the AP that he would

---

[2] Sex Offender Registration Act, N.Y. Corr. Law § 168 (Consol. 2019).

provide the AP's determination to New York when the SPO responded to the transfer request. The AP advised the SPO:

> It appears his [New York] conviction is Megan's Law in [New Jersey] . . . . [The New York] statute resembles . . . our Luring Statute[,] [N.J.S.A.] 2C:13-6[,] which makes him Megan's Law. He's already living in [New Jersey and] should already be registered. Technically, he's in violation. If you agree to the supervision, make him register [with the local police department] ASAP. We will need copies of his entire file in order to tier him once he registers.

The SPO then responded:

> He is not currently in [New Jersey], as per [i]nterstate guidelines for transfers he is required to stay in New York . . . for [five] days until we send reporting instructions that his case has been approved. I will refer him to [the local New Jersey police department] once the case has been accepted. The information on the offense that I faxed was all that New York provided[;] if there is any other paperwork[,] I will mail it to you.

Thereafter, New Jersey Probation Services accepted supervision of A.A. from New York. In April 2009, the SPO advised the AP of the transfer and enclosed A.A.'s paperwork. The SPO noted:

> As per our previous correspondence, your office determined that [A.A.'s] offense would require him to register under Megan's Law in New Jersey, and I confirmed with [a] [d]etective [of the local New Jersey police department] that he registered his address [in New Jersey] with their department[.]

Therefore, A.A. had notice of his obligation to register.

In April 2018, nine years after the AP performed the "similar to" analysis, A.A. filed a motion to terminate ab initio his Megan's Law registration requirement. The judge heard oral argument in July 2018. On September 5, 2018, the judge issued the order and written decision denying his motion, which led to this appeal.

II.

On appeal, A.A. argues:

POINT I

MEGAN'S LAW WAS UNCONSTITUTIONALLY IMPOSED ON A.A. ABSENT DUE PROCESS PROTECTIONS UNDER THE STATE AND FEDERAL CONSTITUTIONS.

POINT II

THE COURT BELOW UNCONSTITUTIONALLY SHIFTED THE BURDEN OF PROOF AS TO THE "SIMILAR TO ANALYSIS" UNDER MEGAN'S LAW TO A.A.

POINT III

THE FAILURE OF THE COURT TO RESTRICT ITS ANALYSIS OF A.A.'S NEW YORK CONVICTION TO AN ELEMENTS ONLY TEST VIOLATES THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

POINT IV

THE NEW JERSEY CRIMINAL STATUTE THAT IS "SIMILAR TO" THE NEW YORK CRIMINAL

6

STATUTE OF WHICH A.A. WAS CONVICTED IS N.J.S.A. 2C:34-3(B).

POINT V

BECAUSE [NEW YORK PENAL LAW] § 235.21(3) DOES NOT INCLUDE ALL OF THE ESSENTIAL ELEMENTS OF N.J.S.A. 2C:24-4A, THE MEGAN'S LAW COURT ERRED IN FINDING THE NEW YORK CONVICTION SIMILAR TO A MEGAN'S LAW REGISTERABLE OFFENSE.

III.

We begin by briefly summarizing the pertinent law on registration obligations. Megan's Law generally establishes a registration system for sex offenders and offenders who commit predatory acts against children. It devises community notification procedures, which are based on a risk assessment of the offender. Doe v. Poritz, 142 N.J. 1, 14 (1995). The expressed purposes of the registration and notification procedures are "public safety" and "preventing and promptly resolving incidents involving sexual abuse and missing persons." N.J.S.A. 2C:7-1. The law is remedial and not intended to be punitive. Doe, 142 N.J. at 12-13.

Megan's Law specifically addresses registration obligations for offenders convicted of qualifying crimes in other jurisdictions. N.J.S.A. 2C:7-2 states in pertinent part:

> (a) (1) A person who has been convicted . . . of a sex offense as defined in subsection b. of this section shall

register as provided in subsections c. and d. of this section.

> . . . .

b. For the purposes of this act[,] a sex offense shall include the following:

> . . . .

(2) A conviction . . . for . . . endangering the welfare of a child by engaging in sexual conduct which would impair or debauch the morals of the child pursuant to subsection a. of [N.J.S.A. 2C:24-4] . . . or an attempt to commit [that crime;]

(3) A conviction . . . for an offense <u>similar to</u> any offense enumerated in paragraph (2) or a sentence on the basis of criteria similar to the criteria set forth in paragraph (1) of this subsection entered or imposed under the laws of the United States, this State, or another state.

[(Emphasis added).]

Pertinent to A.A.—who resided in New Jersey at the time of his New York conviction and who would be serving a probationary sentence under the supervision of Essex County Probation Services—N.J.S.A. 2C:7-2 further provides that:

> c. A person required to register under the provisions of this act shall do so on forms to be provided by the designated registering agency as follows:

> (1) A person who is required to register and who is under supervision in the community on probation . . . shall register at the time the person is placed under supervision . . . in accordance with procedures

established by . . . the Administrative Office of the Courts;

. . . .

(3) A person moving to or returning to this State from another jurisdiction shall register with the chief law enforcement officer of the municipality in which the person will reside or, if the municipality does not have a local police force, the Superintendent of State Police[.]

. . . .

e. A person required to register under . . . paragraph (3) of subsection b. . . . on the basis of a conviction for an offense <u>similar to</u> an offense enumerated in paragraph (2) of subsection b. shall verify his address annually in a manner prescribed by the Attorney General[.]

[(Emphasis added).]

IV.

We now turn to the heart of this case: whether A.A. is entitled to procedural due process on the "similar to" analysis, and if so, what process is due. We conclude that A.A. is entitled to procedural due process. That is, he is entitled to notice of the AP's initial determination that he must register under Megan's Law. He can challenge that determination at a summary hearing in the Law Division.

The United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law[.]" <u>U.S. Const.</u> amend. XIV, § 1. New Jersey's Constitution "does not enumerate the right to

A-0678-18T1

due process, but protects against injustice and, to that extent, protects 'values like those encompassed by the principle[] of due process.'"  Doe, 142 N.J. at 99 (Greenberg v. Kimmelman, 99 N.J. 552, 568 (1985)) (alteration in original); see also N.J. Const. art. I, ¶ 1.  In concluding that A.A. is entitled to procedural due process, we consider whether the State interfered with a liberty or property interest, and if so, whether the associated "similar to" procedures—notice and an opportunity to be heard in the Law Division—are constitutionally sufficient.

An offender's liberty interest is significantly affected by an AP's "similar to" determination.  For example, the offender must be registered for at least fifteen years before seeking termination of that obligation under N.J.S.A. 2C:7-2(f).[3]  An offender faces potential criminal liability for failing to register. N.J.S.A. 2C:7-2.  Registered offenders are limited in other consequential ways. See, e.g., N.J.S.A. 2C:7-23 (prohibiting participation in certain organizations). Also, the AP's initial "similar to" registration determination imposes

---

[3]  N.J.S.A. 2C:7-2(f) provides the only basis for terminating a properly imposed Megan's Law registration requirement; it is predicated upon the offender not committing another offense for fifteen years and proof that the offender "is not likely to pose a threat to the safety of others."  In addition, N.J.S.A. 2C:7-2(g) limits the offenders who may access this procedure.  We note that A.A. did not file his motion under this statute; rather, he moved to terminate his obligation ab initio.

obligations associated with any subsequent tier decision by the prosecutor, particularly if the offender is classified as a Tier II or Tier III offender. N.J.S.A. 2C:7-8, -13. Indeed, the Supreme Court concluded that "under both the Federal and State Constitutions, the Registration and Notification Laws implicate [protectable] liberty interests in privacy and reputation, and therefore trigger the right to due process." Doe, 142 N.J. at 106.

But procedural due process—a flexible concept—"depends on the particular circumstances." Ibid. At a minimum, it requires notice and an opportunity to be heard. Ibid. Our focus is not so much on the notice to which A.A. is clearly entitled; he is indisputably entitled to notice of his registration obligation, which he received. Rather, we concentrate on the process of making the "similar to" determination, and A.A.'s associated right to be heard.

Megan's Law does not establish a procedure for making the "similar to" determination. Although the Office of the Attorney General (AG) adopted the Attorney General Guidelines for Law Enforcement for the Implementation of Sex Offender Registration and Community Notification Laws (AG's Guidelines) (rev'd Feb. 2007), the AG's Guidelines also do not identify a

procedure for conducting the "similar to" analysis.[4]  At oral argument before us, counsel verified that no such documentation exists.

The State argues A.A. is not entitled to procedural due process because A.A. is classified as a Tier I offender, and the Court previously concluded that only Tier II and Tier III classifications warrant hearings.  See id. at 107. However, the State's reliance on Doe is misplaced.  Doe did not address protectable interests under N.J.S.A. 2C:7-2(b)(3), nor whether an offender with an out-of-state conviction is entitled to due process with respect to a "similar to" analysis.  The concept of tier classification and community notification is completely different than a "similar to" analysis under N.J.S.A. 2C:7-2(b)(3). Thus, we reject the State's contention that A.A. is not entitled to due process in a "similar to" analysis.

---

[4]  In March 2019, A.A.'s counsel notified the AG about this appeal, attached his merits brief, and stated:

> Pursuant to . . . Rule 4:28-4(a) and (c) . . . [A.A.] [has] challeng[ed] the constitutionality of N.J.S.A. 2C:7-2(b)(3). [A.A.] asserts . . . that [the statute's] failure . . . to afford [A.A.], and others similarly situated, any process whatsoever prior to determining that an individual with an out-of-state conviction is required to register under Megan's Law, violates the New Jersey [and Federal] Constitution[s].

The AG did not seek intervention in this appeal, although it had the right to do so.

Nevertheless, even if procedural due process principles do not entitle offenders to the right to file a motion and challenge an AP's determination that the out-of-state conviction is "similar to" an enumerated offense under Megan's Law, fundamental fairness requires such a process. In invoking the doctrine, the Court stated in Doe:

> New Jersey's doctrine of fundamental fairness "serves to protect citizens generally against unjust and arbitrary governmental action, and specifically against governmental procedures that tend to operate arbitrarily. [It] serves, depending on the context, as an augmentation of existing constitutional protections or as an independent source of protection against state action."
>
> [Id. at 108 (alteration in original) (quoting State v. Ramseur, 106 N.J. 123, 377 (1987) (Handler, J., dissenting)).]

The Court noted that it relied on the doctrine of fundamental fairness "to protect the rights of defendants at various stages of the criminal justice process even when such procedures were not constitutionally compelled." Ibid. Moreover, a summary "similar to" hearing, when requested by motion, will not seriously burden the State or an offender.

### A.

The first question as to the "similar to" procedure is whether a county AP or a Law Division judge makes the initial determination. On this issue, the parties agree. Indeed, at oral argument before us, counsel stated that the

general procedure for undertaking a "similar to" determination—and the one used here—requires that an AP make the initial determination of whether the out-of-state conviction is "similar to" an enumerated offense under Megan's Law. This procedure is congruent with Megan's Law, which accords county APs substantial responsibility to perform many day-to-day acts in furtherance of the statute. See, e.g., N.J.S.A. 2C:7-4(c); N.J.S.A. 2C:7-8(d); N.J.S.A. 2C:7-13(e); N.J.S.A. 2C:7-21(b); Doe, 142 N.J. at 22-23; AG's Guidelines, at 4-5. Therefore, we see no reason to change this practice.

### B.

The next question is whether A.A. was entitled to challenge the AP's determination that his out-of-state conviction was "similar to" an enumerated offense under Megan's Law. Once again, the parties agree that a registrant may challenge the initial determination, which underscores A.A.'s fundamental entitlement to procedural due process protections. At oral argument before us, counsel agreed that A.A. had the right—which he exercised here—to file a motion in the Law Division to terminate his registration obligation ab initio. The motion triggers a summary hearing before the judge, which we will now address.

First, a judge performs a "similar to" analysis on the motion by following the protocol in R.B. The judge's role at the summary hearing is

primarily a legal one.  In R.B., a registrant sought a declaration in the Law Division that his federal crime was not "similar to" an enumerated offense under Megan's Law.  376 N.J. Super. at 459.  The judge concluded the crimes were similar and required R.B. to register as a sex offender.  Id. at 459-60.  We conducted a de novo review and upheld that conclusion, and addressed the "similar to" analysis:

> [S]o long as the conviction being compared to a Megan's Law enumerated offense contains the same essential elements, and the underlying purposes of the crimes are consonant, the conviction should be considered similar to the Megan's Law enumerated offense for purposes of requiring sex offender registration in New Jersey.  Because the elements of the offense cannot be viewed in a vacuum, to make this determination may entail examining the facts underlying the offense as charged in the indictment. We believe this approach will reconcile the competing public policies of protecting the public against sex offenders, while also ensuring the potential registrant's due process rights.
>
> [Id. at 464 (emphasis added).]

Thus, at the summary hearing, the judge should primarily:  (1) undertake an element-by-element legal comparison of the criminal codes of New Jersey with that of the other jurisdiction; and (2) compare the underlying purposes of the criminal statutes.  Consistent with R.B., and to avoid reviewing the elements of the offense in a vacuum, the judge may examine trustworthy, relevant

evidence as to the underlying factual predicate for the out-of-state conviction. Id. at 465.

On this appeal, A.A. proposes we limit the evidence a judge can consider at the summary hearing. He suggests that the judge only consider the statutes, charging documents, and plea allocutions. But his proposal ignores our statement in R.B., that "the elements of the offense cannot be viewed in a vacuum," and the "similar to" determination may entail examining the facts underlying the offense. His proposal does not acknowledge the Court's statement that Megan's Law "should be construed broadly to achieve its goal of protecting the public[.]" State v. S.R., 175 N.J. 23, 36 (2002). There are also practical problems associated with imposing such limitations.

From a practical standpoint, a judge at the summary hearing cannot control how other jurisdictions prepare charging documents nor the information included in a plea allocution. In some cases, charging documents may provide detailed facts about the underlying offense; yet in others, they may not. In some instances—like here—documents may not be available for the judge's review. There may be instances where an offender does not plead guilty, but is found guilty or found not guilty by reason of insanity. Consequently, a judge at a summary hearing may examine the facts underlying

the offense so long as that examination entails consideration of reliable and trustworthy evidence of the factual predicate for the underlying offense.

We reject A.A.'s related contention that the Sixth Amendment of the United States Constitution limits what evidence a judge may consider at the summary hearing. To support his argument, he cites criminal cases involving sentencing decisions, to which the Sixth Amendment applies.[5] His reliance on that body of law is misplaced. The Sixth Amendment applies to criminal prosecutions, but a "similar to" determination is not a criminal prosecution, and the judge does not consider an appropriate sentence for a criminal conviction. By the time a judge conducts the summary hearing, the foreign jurisdiction has already resolved an offender's guilt (either by a plea or trial) and imposed a sentence.

Second, we reject A.A.'s argument that at the hearing the State must prove by clear and convincing evidence that the out-of-state conviction is

---

[5]   See Mathis v. United States, ___ U.S. ___, 136 S. Ct. 2243 (2016); Descamps v. United States, 570 U.S. 254 (2013); Taylor v. United States, 495 U.S. 575 (1990); United States v. Chapman, 866 F.3d 129 (3d Cir. 2017), cert. denied, ___ U.S. ___, 138 S. Ct. 1582 (2018); United States v. Edwards, 836 F.3d 831 (7th Cir. 2016); United States v. Sherbondy, 865 F.2d 996 (9th Cir. 1988); United States v. Vidaure, 861 F.2d 1337 (5th Cir. 1988); United States v. Headspeth, 852 F.2d 753 (4th Cir. 1988); State v. Rhodes, 329 N.J. Super. 536, 542 (App. Div. 2000). He also cites two federal immigration cases where the criminal law standard was applied. See Sessions v. Dimaya, ___ U.S. ___, 138 S. Ct. 1204 (2018); Stubbs v. Att'y Gen., 452 F.3d 251 (3d Cir. 2006).

"similar to" an enumerated offense under Megan's Law. Comparing the elements and underlying purposes of the crimes is a legal task. In conducting the "similar to" determination, a judge may examine the facts of the underlying offense to avoid considering the elements of the offense in a vacuum, but the judge does so merely to determine whether the elements and purposes of the crimes are "similar to" a Megan's Law offense.[6]

A judge's "similar to" legal determination at a summary hearing is completely different than, for example, a judicial determination for tier classification and community notification, which "must be [made] by clear and convincing evidence." G.H. v. Twp. of Galloway, 401 N.J. Super. 392, 403 (App. Div. 2008) (citing E.B. v. Verniero, 119 F.3d 1077, 1111 (3d Cir. 1997)), aff'd o.b., 199 N.J. 135 (2009). Clear and convincing evidence is characterized "as evidence on which the trier of fact can rest 'a firm belief or conviction as to the truth of the allegations sought to be established.'" In re Registrant J.G., 169 N.J. 304, 330-31 (2001) (quoting In re Purrazella, 134 N.J. 228, 240 (1993)). In those matters, unlike here, a judge balances the

---

[6] We note that at the summary hearing, the judge mistakenly referred to A.A. having a burden of proof, and also stated that the State must prove by clear and convincing evidence that A.A.'s New York crime was "similar to" an enumerated Megan's Law offense. Ultimately, however, the judge applied R.B. and determined that the New York crime was "similar to" an enumerated offense under Megan's Law.

registrant's right to privacy against the community's interest in safety and notification.  In re Registrant G.B., 147 N.J. 62, 74 (1996).

Along those lines, the Registrant Risk Assessment Scale (RRAS) is a reliable instrument used to determine whether a sex offender's risk of re-offense is low (Tier I), moderate (Tier II), or high (Tier III).  Id. at 81-82; State v. C.W., 449 N.J. Super. 231, 260 (App. Div. 2017) (citing In re Registrant V.L., 441 N.J. Super. 425, 429 (App. Div. 2015)).  "The RRAS was developed by a committee of mental health experts and members of the law enforcement community convened by the Attorney General."  C.W., 449 N.J. Super. at 260.  A.A. obtained a score of twenty on his RRAS, classifying him as a Tier I offender with a low-risk of re-offense.

Another difference between the legal determination by the judge at a "similar to" hearing and the assignment of a tier rating to a registered sex offender is that in the latter, the court considers thirteen factors in four distinct categories:  (a) the seriousness of the offense; (b) the offender's history; (c) the available community support; and (d) the offender's characteristics.  Ibid. (citing V.L., 441 N.J. Super. at 429); see In re Registrant C.A., 146 N.J. 71, 103 (1996) (addressing the thirteen factors).  Each factor is assigned a risk level of low (0), moderate (1), or high (3), and "[t]he total for all levels within a category provides a score that is then weighted based on the particular

category." C.A., 146 N.J. at 104. Judicial determinations regarding tier classification and community notification are within the judge's discretion and based on all of the available evidence, not simply the "numerical calculation provided by the [RRAS]." G.B., 147 N.J. at 78-79 (citing C.A., 146 N.J. at 109). Ultimately, "a value judgment" is required. Id. at 78 (citing C.A., 146 N.J. at 109). At a "similar to" hearing, the judge would not make a discretionary decision based on a value judgment; it is a legal determination.

Here, the judge adhered to these minimum procedural due process protections in conducting the summary hearing.

V.

Finally, we address A.A.'s argument that the judge erroneously determined that his New York conviction was "similar to" an enumerated offense under Megan's Law; specifically, that the judge erred in concluding New York Penal Law § 235.21(3), second-degree disseminating indecent material to minors, is "similar to" N.J.S.A. 2C:24-4(a), third-degree endangering the welfare of a child. Instead, A.A. maintains that his New York conviction is "similar to" a conviction under N.J.S.A. 2C:34-3(b), third-degree promoting obscene material to persons under the age of eighteen, which is not an enumerated offense under Megan's Law. N.J.S.A. 2C:7-2(b). Our review of A.A.'s argument is de novo. R.B., 376 N.J. Super. at 460.

A.A. was convicted under New York Penal Law § 235.21, which provides:

> A person is guilty of disseminating indecent material to minors in the second[-]degree when:
>
> . . . .
>
> 3. Knowing the character and content of the communication which, in whole or in part, depicts actual or simulated nudity, sexual conduct or sado-masochistic abuse, and which is harmful to minors, he intentionally uses any computer communication system allowing the input, output, examination or transfer, of computer data or computer programs from one computer to another, to initiate or engage in such communication with a person who is a minor.

Under New York Penal Law § 235.20(1) (Consol. 2019), a "[m]inor" is defined as "any person less than seventeen years old." "Nudity" is defined as:

> [T]he showing of the human male or female genitals, pubic area or buttocks with less than a full opaque covering, or the showing of the female breast with less than a fully opaque covering of any portion thereof below the top of the nipple, or the depiction of covered male genitals in a discernably turgid state.
>
> [N.Y. Penal Law § 235.20(2).]

Finally, "[h]armful to minors" is defined as:

> [T]hat quality of any description or representation, in whatever form, of nudity, sexual conduct, sexual excitement, or sado-masochistic abuse, when it:
>
> (a) Considered as a whole, appeals to the prurient interest in sex of minors; and

(b) Is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable material for minors; and

(c) Considered as a whole, lacks serious literary, artistic, political and scientific value for minors.

[Id. at § 235.20(6).]

In New Jersey, N.J.S.A. 2C:24-4(a)(1) proscribes endangering the welfare of a child:

(1) Any person having a legal duty for the care of a child or who has assumed responsibility for the care of a child who engages in sexual conduct which would impair or debauch the morals of the child is guilty of a crime of the second[-]degree. Any other person who engages in conduct or who causes harm as described in this paragraph to a child is guilty of a crime of the third[-]degree.

[(Emphasis added).] [7]

In 2008, at the time of A.A.'s offense, the term "[c]hild" was defined as "any person under [sixteen] years of age"; that definition was amended in 2013, to define "[c]hild" as "any person under [eighteen] years of age."  N.J.S.A.

---

[7] A.A. correctly notes that N.J.S.A. 2C:24-4(a) was amended in 2013. L. 2013, c. 136, § 1.  However, the amendments did not affect the substance of the criminalized acts; it only bifurcated those acts into two subparts.

2C:24-4(b)(1). See Cannel, N.J. Criminal Code Annotated, cmt. 1 on N.J.S.A. 2C:24-4 (2019).[8]

In addition, N.J.S.A. 2C:34-3(b) proscribes "[p]romoting obscene material" to persons under the age of eighteen:

> (1) A person who knowingly sells, distributes, rents or exhibits to a person under [eighteen] years of age obscene material is guilty of a crime of the third degree.
>
> (2) A person who knowingly shows obscene material to a person under [eighteen] years of age with the knowledge or purpose to arouse, gratify or stimulate himself or another is guilty of a crime of the third degree if the person showing the obscene material is at least four years older than the person under [eighteen] years of age viewing the material.

The statute defines "[o]bscene material" as:

> [A]ny description, narrative account, display, depiction of a specified anatomical area or specified sexual activity contained in, or consisting of, a picture or other representation, publication, sound recording, live performance or film, which by means of posing, composition, format or animated sensual details, emits sensuality with sufficient impact to concentrate prurient interest on the area or activity.
>
> [N.J.S.A. 2C:34-3(a)(1).]

---

[8] A.A. communicated with a person he believed to be fourteen years old. Thus, his equal protection argument is not implicated because at all relevant times, communicating sexual materials to a fourteen-year-old was a criminal offense under New York and New Jersey law.

It defines "[s]pecified anatomical area" as: "(a) [l]ess than completely and opaquely covered human genitals, pubic region, buttock or female breasts below a point immediately above the top of the areola; or (b) [h]uman male genitals in a discernibly turgid state, even if covered." N.J.S.A. 2C:34-3(a) to (b). It defines "[s]pecified sexual activity" as: "(a) [h]uman genitals in a state of sexual stimulation or arousal; or (b) [a]ny act of human masturbation, sexual intercourse or deviate sexual intercourse; or (c) [f]ondling or other erotic touching of covered or uncovered human genitals, pubic region, buttock or female breast." N.J.S.A. 2C:34-3(a)(4). And N.J.S.A. 2C:34-3(a)(6) defines "[e]xhibit" as "the sale of admission to view obscene material."

The judge considered these statutes and rejected A.A.'s argument that his New York conviction was "similar to" N.J.S.A. 2C:34-3(b), stating an "essential element" of New York Penal Law § 235.21(3) was the initiation or engagement of communication with a minor via computer, whereas that element was not found in N.J.S.A. 2C:34-3(b). The judge determined that A.A.'s New York conviction was "similar to" a conviction under N.J.S.A. 2C:24-4(a), given that both statutes criminalized exhibiting explicit materials to children for the purpose of sexual gratification. Applying our de novo review, the facts underlying the New York prosecution made it clear that

A.A.'s New York conviction was "similar to" endangering the welfare of a child. N.J.S.A. 2C:24-4(a).

Considering the three criminal statutes, there are certainly similarities between New York Penal Law § 235.21(3), N.J.S.A. 2C:24-4(a), and N.J.S.A. 2C:34-3(b). However, the underlying concern of N.J.S.A. 2C:34-3(b) is the threat to public decency through the promotion of obscene material. By contrast, New York Penal Law § 235.21(3) and N.J.S.A. 2C:24-4(a) share the same essential elements and underlying concern: the harm caused to minors by engaging in sexual conduct, including communicating sexual images to children via the internet.[9]

Eschewing only an element-by-element approach, and considering the charging documents and A.A.'s admissions to New York authorities, his New

---

[9] See, e.g., State v. Hackett, 166 N.J. 66, 77 (2001) (stating that "the focus in a prosecution for endangering the welfare of children shifts from the mental state of the actor in performing the lewd conduct to the potential effect that such conduct may have on the morals of the child or children who are witness to the conduct"); State v. White, 105 N.J. Super. 234, 236-37 (App. Div. 1969) (finding that the Title 2A crime of impairing the morals of a child differed from crime of exposing children to obscene publications, even though defendant could have been indicted under either); and People ex rel. George v. Howard, 970 N.Y.S.2d 662, 664, 667 (N.Y. Crim. Ct. 2013) (denying writ of habeas corpus, finding that petitioner's having emailed picture of his penis to minor in Alabama was extraditable because his alleged conduct was punishable under N.Y. Penal Law § 235.21(3)).

York conviction is "similar to" the conviction for endangering the welfare of a child.   N.J.S.A. 2C:24-4(a).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0678-18T1