**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 26, 2020[*]
Decided August 27, 2020

**Before**

MICHAEL S. KANNE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 19-1112

| | |
|---|---|
| QUINCY DARNELL BLUE, *Petitioner-Appellant*, | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 17-cv-1215-DRH |
| ERIC WILLIAMS, *Respondent-Appellee*. | David R. Herndon, *Judge*. |

**O R D E R**

Quincy Blue seeks collateral relief from his criminal sentence. After a federal jury in Kansas convicted Blue of bank robbery and using a firearm during a crime of violence, *see* 18 U.S.C. §§ 924(c), 2113(a), the sentencing court ruled that he was a "career offender." For the predicate offenses, the court cited his prior state convictions, which included two convictions for possessing drugs with intent to sell. He received a

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

sentence of 30 years' imprisonment. After a failed appeal and two unsuccessful motions for collateral relief under 28 U.S.C. § 2255, Blue now seeks relief under 28 U.S.C. § 2241. He contends that he is entitled to relief under *Mathis v. United States*, 136 S. Ct. 2243 (2016), as reflected by a Tenth Circuit decision that he says relied on *Mathis* to hold that his drug crimes are not predicate offenses. The district court denied the § 2241 petition. Because the Tenth Circuit decision relied on pre-*Mathis* principles to hold that his drug crimes are not predicates, Blue could have raised the same arguments in his original motion under § 2255. He thus cannot use § 2241 to seek relief, so we affirm.

At the time of Blue's robbery conviction in 2003, he had four prior Kansas felony convictions: two for aggravated escape from custody, KAN. STAT. ANN. § 21-3810 (1993), one for possessing cocaine with intent to sell, *id.* § 65-4127a, and one for possessing cocaine and marijuana with intent to sell, *id.* §§ 65-4127a, 65-4127b. For career-offender status, the Sentencing Guidelines require two prior convictions of either "crimes of violence" or "controlled substance offenses." *See* U.S.S.G. § 4B1.2(b). The probation office determined that Blue qualified because his two escape convictions were "crimes of violence." This subjected Blue to a then-mandatory Guidelines range of 360 months to life in prison. Had Blue not been a career-offender, he would have faced a range of only 144 to 165 months' imprisonment. The court imposed the minimum sentence of 360 months. Blue appealed but did not challenge his career-offender status, and the Tenth Circuit affirmed. *See United States v. Blue*, 122 F. App'x 427 (10th Cir. 2005).

Four years later, Blue filed a counseled motion under 28 U.S.C. § 2255, contending that he was entitled to resentencing in light of *Chambers v. United States*, 555 U.S. 122 (2009). *Chambers* had ruled that a defendant's Illinois escape conviction did not count as a "crime of violence," and Blue argued that the same logic applied to his Kansas escape convictions. *See United States v. Blue*, Civ. No. 09-1108, 2009 WL 2581284 (D. Kan. Aug. 20, 2009). But the court denied his motion, concluding that Blue would still qualify as a career offender even without the escape convictions because of his two drug convictions. *Id.* Blue conceded that convictions under the Kansas drug statute counted toward career-offender status and did not appeal.

In 2016, Blue sought leave to file a successive motion under § 2255(h), relying on *Johnson v. United States*, 135 S. Ct. 2551 (2015), to contest again that his escape convictions counted toward his career-offender status. The Tenth Circuit denied leave to file. It reasoned that because the postconviction court had not relied on Blue's escape convictions to deny his § 2255 motion, another case showing that his escape convictions were not predicates would make no difference.

Finally, in 2017, Blue filed his current § 2241 petition in the Southern District of Illinois, where he is incarcerated. This petition attacks the sentencing court's reliance on his two drug convictions. Blue contends that under *Mathis,* and as reflected in *United States v. Madkins*, 866 F.3d 1136 (10th Cir. 2017), those convictions are not "controlled substance offenses." The district court denied the petition. It explained that Blue could not file a petition under § 2241 unless he relied on a decision that announced a new rule of statutory interpretation, which applied retroactively and could not have been invoked in his earlier petitions. The court concluded that *Mathis* did not declare a "new" rule, it merely applied existing precedent.

Our resolution of Blue's appeal centers on § 2255(e)'s so-called "savings clause." In general, a federal prisoner wishing to attack his sentence collaterally must file a § 2255 motion in the district where he was convicted. *Chazen v. Marske*, 938 F.3d 851, 856 (7th Cir. 2019). But under the savings clause, a prisoner may instead file a § 2241 petition in the district of incarceration if he can show that § 2255 is "inadequate or ineffective" to test the legality of his detention. *Id.* To determine when § 2255 is "inadequate or ineffective" we apply a three-part test: the petitioner must show that (1) he seeks relief based on a decision of statutory interpretation, (2) the decision declares a rule that applies retroactively and which the prisoner could not have invoked in his first § 2255 motion, and (3) relief is necessary to avoid a miscarriage of justice. *Id.* If Blue cannot meet this test, his § 2241 petition must be denied. *Id.*

Blue's petition fails to satisfy the second part of our savings-clause test. Although the case he relies on, *Mathis*, 136 S. Ct. 2243, is about statutory interpretation, Blue does not rely on any rule from it that he could not have invoked in his original motion under § 2255. To explain this conclusion, we first briefly review how courts determine whether a state conviction is a predicate offense.

A defendant's state conviction qualifies as a predicate offense if the state defines the offense the same as (or more narrowly than) the Guidelines. *United States v. Edwards*, 836 F.3d 831, 835 (7th Cir. 2016). To determine if a state conviction is a match, courts use the "categorical approach" by "looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." *Taylor v. United States*, 495 U.S. 575, 600 (1990). (Cases like *Taylor* that apply the categorical approach to the Armed Career Criminal Act are interchangeable with career-offender Guidelines cases. *See Edwards*, 836 F.3d at 834 n.2). A state conviction is a predicate offense only if the statutory elements of the offense necessarily encompass all the elements of the Guidelines definition of the offense. *Id.* at 835. If a statute is "divisible," meaning it sets

out one or more elements "in the alternative," courts use the "modified categorical approach." Under this approach, courts may consult jury instructions, indictments, or plea colloquies to determine under which alternative the defendant was convicted. *Descamps v. United States*, 570 U.S. 254, 257 (2013). But this approach applies only when a statute includes alternative *elements*, not alternative *means* of satisfying the same element. *Id.* at 263. Some circuits (including the Tenth Circuit) did not adhere to this elements/means distinction and applied the modified categorical approach to any statute that listed alternative ways of committing a crime, even when it did not include alternative elements. *See Mathis*, 136 S. Ct. at 2251 n.1. So in *Mathis*, the Supreme Court reaffirmed the distinction. Specifically, the Court reiterated that (1) the modified categorical approach applies only when a statute is divisible, and (2) a statute is not divisible if it merely lists multiple means of satisfying the same element. *Id.* at 2253.

Blue's petition does not depend on the element/means distinction that *Mathis* reaffirmed. Nonetheless Blue believes that he could not have challenged the use of his drug convictions as predicate offenses before *Mathis*. For that belief he cites the Tenth Circuit's decision in *Madkins*, which he argues relied on *Mathis* to hold that Kansas's drug crimes of possession with intent to sell are not "controlled substance offenses." But in ruling that the Kansas's definition for "intent to sell" punishes more conduct than its Guidelines counterpart, *Madkins* did not rely on anything new in *Mathis*. It cited *Mathis* only for a restatement of pre-existing law about the categorical approach, not for the elements/means distinction. *Madkins*, 866 F.3d at 1145. Further, in holding that the Kansas statute was divisible, *Madkins* applied the same modified categorical approach that the Tenth Circuit would have used before *Mathis*. *Id.* The Tenth Circuit simply had not previously considered whether Kansas's statute matched the Guidelines definition. *See id.* (noting that issue was new). In short, *Mathis* did not expand Blue's opportunity for relief; he relies on *Mathis* only for rules of interpretation that were already available to him when he filed his original petition. *See, e.g., Taylor*, 495 U.S. at 602 (describing modified categorical approach); *Shepard v. United States*, 544 U.S. 13, 26 (2005) (same).

Similarly, we disagree with Blue's contention that *Mathis* and *Madkins* overruled other cases in the Tenth Circuit that foreclosed his argument. Blue seizes on a footnote in *Madkins*, which he thinks established for the first time that courts should apply the categorical or modified categorial approach to predicates for career-offender status under the Guidelines. *See* 866 F.3d at 1144 n.4. But the Tenth Circuit consistently applied these approaches to career-offender predicates, well before *Madkins* and *Mathis*. *See, e.g., United States v. Wise*, 597 F.3d 1141, 1144 (10th Cir. 2010); *United States v. Charles*, 576 F.3d 1060, 1067 (10th Cir. 2009); *United States v. Karam*, 496 F.3d 1157, 1166–67 (10th Cir.

2007). Blue argues that under *United States v. Smith*, 433 F.3d 714 (10th Cir. 2006), his § 2255 petition was doomed because the Tenth Circuit would have considered his conduct underlying his drug convictions, rather than just the elements of the offenses. Yet *Smith* used the modified categorical approach, just as *Madkins* did, even if it did not refer to the doctrine by name. See *id*. at 718 (citing *Shepard*, 544 U.S. 13, and *Taylor*, 495 U.S. at 602) (focusing on the elements that defendant was charged with and pleaded guilty to). Thus *Smith* did not foreclose Blue from advancing his current arguments.

Blue next argues that we granted relief to § 2241 petitioners under *Mathis* in two cases: *Beason v. Marske*, 926 F.3d 932, 935 (7th Cir. 2019), and *Chazen*, 938 F.3d 851. But neither case applies here, because, unlike Blue, those petitioners could not raise their arguments in their § 2255 motions. In *Beason*, which did not even rely on *Mathis*, we noted that the petitioner was previously foreclosed from raising his arguments under the law-of-the-case doctrine and concluded that intervening circuit precedent entitled him to relief. 926 F.3d at 937. And in *Chazen*, the petitioner could not obtain relief in his original § 2255 motion in Minnesota because binding Eighth Circuit precedent, which *Mathis* abrogated, held that his prior conviction for Minnesota burglary counted as a predicate offense under the Armed Career Criminal Act. *Chazen*, 938 F.3d at 862.

Blue makes two additional arguments in favor of granting relief, but neither has merit. First, he accuses the district judge who denied his § 2241 petition of improper ex parte communications with the government. Blue points out that when the government moved for an extension of time to respond to his petition, the Assistant United States Attorney asked the court's staff whether she should file a consolidated answer to Blue's petition and amended petition. But ex parte communications are permitted "for scheduling, administrative, or emergency purposes" as long as they do "not address substantive matters and the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result." CODE OF CONDUCT FOR U.S. JUDGES Canon 3(A)(4)(b); *see also Drobny v. Comm'r*, 113 F.3d 670, 680 (7th Cir. 1997). Because Blue cites no evidence of other communications between the government and the court, nor evidence that this contact prejudiced him or involved the merits, the court did not abuse its discretion by allowing its staff to answer it.

Second, Blue argues that denying him relief violates his right to equal protection in two ways: (1) a different judge granted collateral relief to a different petitioner based on what Blue argues were similar grounds, and (2) the government conceded issues in that case that it refuses to concede here. The first argument fails because, among other defects, nothing suggests that either decision was based on intentional discrimination, a

predicate of an equal-protection violation. *Washington v. Davis*, 426 U.S. 229 (1976). Similarly, on the second point, Blue cannot challenge the government's prosecutorial decisions because he lacks evidence of discrimination based upon invidious criteria such as race or religion. *See United States v. Moore*, 543 F.3d 891, 900 (7th Cir. 2008).

AFFIRMED